UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| AMERICA WEST BANK MEMBERS, L.C., <br><br> Plaintiff, <br><br> v. <br><br> STATE of UTAH; UTAH DEPARTMENT OF FINANCIAL INSTITUTIONS; G. EDWARD LEARY, an individual; and JOHN DOES 1-20, <br><br> Defendants. | **MEMORANDUM DECISION DENYING MOTION FOR LEAVE TO FILE AMENDED COMPLAINT (DOC. NO. 89)** <br><br> Case No. 2:16-cv-00326-CW-DAO <br><br> Judge Clark Waddoups <br><br> Magistrate Judge Daphne A. Oberg |

Before the court is Plaintiff America West Bank Members, L.C.'s ("America West") Motion for Leave to File Amended Complaint (Doc. No. 89). The court held a hearing on this motion on June 21, 2021. (*See* Doc. No. 145.) Based on the parties' briefing and arguments of counsel, and for the reasons stated below, the court DENIES the motion as unduly delayed and because it would cause undue prejudice.

BACKGROUND

America West brought this action against Defendants State of Utah, Utah Department of Financial Institutions (the "UDFI"), and G. Edward Leary (collectively, the "State Defendants") asserting claims of violation of due process and substantive due process, claims under 42 U.S.C. § 1983 and § 1988, as well as unconstitutional takings. (Am. Compl., Doc. No. 33.) In 2016, the State Defendants removed this case to federal court. (Doc. No. 2.)

According to America West, as of 2007, the bank received good ratings from its regulatory reviews. (Am. Compl. 3, Doc. No. 33.) Then, in early 2008 the Federal Deposit

1

Insurance Corporation (the "FDIC") and the UDFI changed their temperament toward the bank and the relationship became hostile and aggressive. (*Id.* at 4.) Despite improved performance from 2007 to 2008, America West received very low ratings on its 2008 review. (*Id.* at 5.) America West attributes the change in ratings to a new group of regulators, led by Pat Pittman, and to the FDIC's joint examination process, which applied different standards and methodologies than previously. (*Id.* at 5–6.) Had the FDIC and the UDFI used appropriate standards, America West contends the reports would have been markedly different. (*Id.* at 7.)

When America West inquired as to the sudden change in the FDIC and the UDFI's attitude toward the bank, Pat Pittman, of the FDIC, and Tyson Sill, of the UDFI, allegedly responded that it was politically motivated and their hands were tied. (*Id.* at 4.) America West contends a former FDIC examiner told America West the FDIC changed its mind about its member banking concept, decided "it must kill the Bank in order to put an end the new concept"—and tasked Mr. Pittman with "killing the Bank." (*Id.* at 4–5, 8.)

On May 1, 2009, Commissioner Leary, acting on behalf of the UDFI, petitioned the State Court of Utah for an order granting possession of the Bank. (*Id.* at 9.) America West asserts Commissioner Leary could not have believed possession was warranted and, in fact, knew or should have known possession was improper because the UDFI knew its reports were incorrect. (*See generally* Am. Compl., Doc. No. 33.) Nevertheless, America West alleges "Commissioner Leary facilitated the FDIC's plan to take down the Bank, as UDFI worked with the FDIC" to use new, incorrect methodologies to create grounds for seizing America West's assets. (*Id.* at 12.)

America West now seeks leave to amend its complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) to add the FDIC and Pat Pittman as defendants. (Mot. for Leave to File Amend. Compl. ("Mot") 1, Doc. No. 89.)

LEGAL STANDARD

After expiration of the time in which a pleading may be amended as a matter of course, a party may amend "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Courts "should freely give leave when justice so requires." *Id*. A district court's decision to grant or deny leave to amend under Rule 15 falls within its discretion. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006). Courts may deny leave to amend "only for reasons such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment.'" *United States ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1166 (10th Cir. 2009) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

ANALYSIS

The proposed amended complaint seeks to name the FDIC and former FDIC employee, Mr. Pittman, as new defendants, alleging they are liable for the claims already asserted. (Mot. 2, Doc. No. 89.) Specifically, America West asserts the FDIC and Mr. Pittman are essential parties because they "worked together with the UDFI Defendants to lay the groundwork for and ultimately carry out the unconstitutional and unlawful seizure of the Bank." (*Id.* at 3, 5.)

Both the FDIC and the State Defendants oppose this motion. According to the FDIC, the motion should be denied on the grounds of bad faith, undue delay, and futility. (Opp'n to Mot. for Leave to File Third Am. Compl. by FDIC in its Corp. and Receivership Capacities ("FDIC Opp'n"), Doc. No. 107.) The State Defendants oppose the motion on the grounds that amendment is unduly delayed and unduly prejudicial—and the State Defendants incorporate the

3

FDIC's arguments regarding futility. (Opp'n to Mot. for Leave to File Am. Compl. ("State Opp'n."), Doc. No. 108.)

### 1. Undue Delay

Undue delay provides a basis for denying a motion to amend. *Lockheed Martin Corp.*, 558 F.3d at 1166. Although "Rule 15(a) does not restrict a party's ability to amend its pleadings to a particular stage in the action," at some point the delay becomes "undue." *Minter*, 451 F.3d at 1205 (internal quotation marks omitted). The longer a party waits to amend, the more likely a court will deny the motion to amend as "protracted delay." *Id*. When determining whether a delay is undue, courts focus "primarily on the reasons for the delay." *Id.* at 1206. While the fact that a motion to amend "is filed within the court's scheduling deadline" is "evidence that the delay was not undue," the moving party must still adequately explain the delay. *Lauer v. Credit Collection Servs.*, No. 1:14-cv-00062, 2015 U.S. Dist. LEXIS 48601, at *4 (D. Utah Apr. 13, 2015) (unpublished). Failure to do so makes denial appropriate. *Minter*, 451 F.3d at 1206.

One critical inquiry is how much time elapsed between the time of filing and the discovery of the facts on which the amendment is based. *See Leatherwood v. Rios*, 705 F. App'x 735, 740 (10th Cir. 2017) (unpublished). "The longer the delay, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." *Minter*, 451 F.3d at 1205 (internal quotation marks omitted). In this district, a delay of four months has been found to be undue. *See Estate of Riecke v. BSA*, No. 2:16-cv-01044, 2017 U.S. Dist. LEXIS 169034, at **7–8 (D. Utah Oct. 11, 2017) (unpublished) (denying a motion to amend to add new defendants where plaintiff waited four months after learning of their involvement); *see also Klaassen v. Atkinson*, No. 13-2561-DDC, 2016 WL 1715434, at *1 (D. Kan. Apr. 29, 2016)

(unpublished) ("Because plaintiff did not move to amend until nearly four months after discovering the information giving rise to the proposed claims and because plaintiff has not provided an adequate reason for the delay, the court holds that plaintiff has unduly delayed.")

America West bases its delay on the State Defendants' production of a working agreement between the UDFI and the FDIC.  America West contends it only became aware of a contractual relationship between the UDFI and the FDIC when it learned of this working agreement.  (Mot. 4, Doc. No. 89.)  Before seeing this document, America West contends, it lacked sufficient evidentiary support to name the FDIC as a party.  (*Id.*; Reply in Supp. of Pl.'s Mot. for Leave to File Am. Compl. ("Reply") 5, Doc. No. 138.)  However, America West also admits it previously knew of the FDIC's role in the bank examination process and it suspected the UDFI was acting at the request of the FDIC.  (Mot. 4, Doc. No 89; Reply 5, Doc. No. 138.)  Finally, America West notes its motion to amend was filed before the amendment deadline in the scheduling order.  (Reply 4, Doc. No. 138.)

The FDIC and the State Defendants argue America West's explanation for the amendment (the production of a working agreement), lacks credibility because this document does not give rise to any new information.  (FDIC Opp'n 6, Doc. No. 107; State Opp'n 5, Doc. No. 108.)  Not only is it a "matter of public record that the FDIC coordinates its examination efforts with state banking authorities," but America West knew this at the time it was examined. (FDIC Opp'n 6, Doc. No. 107; *see also* State Opp'n 4–5, Doc. No. 108.)  According to the FDIC and the State Defendants, a document formalizing this overarching relationship does not materially change the facts sufficient to warrant amendment.  (FDIC Opp'n 6, Doc. No. 107; State Opp'n 5, Doc. No. 108.)  Further, the State Defendants contend America West waited too long to seek amendment after the disclosure of the document.  (State Opp'n 4, Doc. No. 108.)

The document was produced in July 2020, more than nine months before America West filed its motion. (*Id.*)

America West's motion to amend is unduly delayed. As an initial matter, disclosure of the working agreement fails to provide an adequate reason for the delay. Secondarily, even if America West's explanation for the delay were adequate, an unreasonable amount of time lapsed between disclosure of the document and the motion to amend. The fact that America West filed the motion to amend within the scheduling deadline is not enough in light of America West's inadequate explanation for the delay. *See Lauer*, 2015 U.S. Dist. LEXIS 48601, at *4. (*See also* Order re: Scheduling Order 3 n.1, Doc. No. 83 (noting counsel must still comply with the requirements of Rule 15 of the Federal Rules of Civil Procedure).)

Production of the working agreement could only justify a delay here if it somehow affected the material facts in the case. But it does not. For instance, the operative complaint already alleges the FDIC decided it "must kill the Bank in order to put an end to the new [banking] concept" and tasked Mr. Pittman with this job. (Second Am. Compl. 4–5, 8 Doc. No. 33.) And America West was aware the UDFI and the FDIC engaged in joint examinations. (*Id.* at 5.) Indeed, the operative complaint alleges the UDFI worked with the FDIC and carried out the FDIC's plan. (*See, e.g.*, *id*. at 12 ("Commissioner Leary facilitated the FDIC's plan to take down the Bank, as UDFI worked with the FDIC to impose the methodologies discussed above in order to create a basis for asserting that the Bank's assets should be seized"); *id.* at 14 ("UDFI did the bidding of the FDIC, including imposition of a methodology which UDFI employed for the specific purpose of purporting to have cause to seize the Bank and appoint the FDIC as the receiver.").)

America West's proposed third amended complaint adds little to these existing allegations: only that Commissioner Leary and the UDFIs actions were "in concert" with the FDIC. (*See, e.g.*, Proposed Third Am. Compl. 12, Doc. No. 89-1.) But a signed working agreement is not necessary to these allegations. Indeed, at the hearing, America West conceded its claims against the FDIC and Mr. Pittman did not hinge on the existence of written agreement. Because the working agreement does not materially change the facts alleged in America West's second amended complaint, the delay in seeking to add the FDIC and Mr. Pittman as parties cannot validly be based on the production of this agreement.

At the hearing, America West also suggested that before it discovered this working agreement, it did not have sufficient evidence to overcome qualified immunity. America West explained it named Mr. Pittman as a party because claims under 42 U.S.C. § 1983 and § 1988 can only be sustained against individuals. But America West did not specify at the hearing or in its briefing[1] how the working agreement provided the necessary facts for these claims—or how it justified adding Mr. Pittman as a party at all. Indeed, America West acknowledged at the hearing that Mr. Pittman may well be the wrong individual to add for purposes of this claim— and that it would need to again amend its complaint when it identified the right individual.[2]

---

[1] Indeed, America West did not raise this argument in its brief at all. And "[t]he court is generally reluctant to consider new arguments or positions introduced for the first time at oral argument where the opposing party is left without a meaningful opportunity to respond." *ESIP Series 1 LLC v. doTerra Int'l,* No. 2:15-cv-00779, 2021 U.S. Dist. LEXIS 75046, at *15 (D. Utah Apr. 16, 2021) (unpublished)

[2] Needless to say, America West's request to add Mr. Pittman as a defendant—even while acknowledging he is likely the wrong individual to add—is incongruous with its claim that it did not amend its complaint to add the FDIC as a party before discovering the working agreement because it lacked sufficient evidence to do so. Despite acknowledging Mr. Pittman may be the wrong individual to name, America West seeks to name him.

Even assuming America West could provide an adequate reason for the delay, an unreasonable length of time elapsed between the discovery of the agreement and filing of its motion. There is no dispute the working agreement was produced in July 2020. (Reply 4, Doc. No. 138.) At the hearing, America West excused its filing of the motion to amend nine months later by noting that due to the significant amount of discovery in this action, counsel did not review the working agreement until December 2020. The State Defendants argued America West knew or should have known of the agreement as of its production date, because it was provided as part of initial disclosures, not buried in a mass of discovery.

The precise timing of when America West knew or should have known of this working agreement need not be decided because whether America West's motion was filed five months or nine months after discovery of the working agreement, it was unduly delayed. Even four months from the discovery of the evidence leading to amendment and the filing of the motion has been considered undue delay in this circuit. *See Estate of Riecke*, 2017 U.S. Dist. LEXIS 169034, at **7–8; *Klaassen*, 2016 WL 1715434, at *1.

## 2. Undue Prejudice

Even more problematic than the undue delay the amendment would cause is the undue prejudice. The "most important[] factor in deciding a motion to amend the pleadings[] is whether the amendment would prejudice the nonmoving party." *Minter*, 451 F.3d at 1207. "A need to reopen discovery[] [or] a delay in proceedings . . . are indicators of prejudice." *US Magnesium, LLC v. ATI Titanium LLC*, No. 2:17-cv-00923, 2020 U.S. Dist. LEXIS 90609, at *6 (D. Utah May 22, 2020) (unpublished).

The State Defendants first argue undue *legal* prejudice would arise from amendment. (State Opp'n 7–8, Doc. No. 108.) As the State Defendants point out, substantive motions have

8

already been decided in this case, including a motion to dismiss, (Doc. No. 29) and America West's partial summary judgment motion, (Doc. No. 64). Thus, the State Defendants contend future litigation would necessarily prejudice either the FDIC or the State Defendants. Either the FDIC would be prejudiced if it were bound by rulings on issues it was unable to litigate—or the State Defendants would be prejudiced if the FDIC were permitted to relitigate those same issues. (State Opp'n 7–8, Doc. No. 108.)

The State Defendants also contend they would be prejudiced by additional delay in the case, and by the restarting of discovery processes. As the State Defendants point out, the written discovery deadline has passed and depositions are well under way. If Mr. Pittman and the FDIC were added to this action, discovery timeframes would essentially begin anew, as the new defendants would almost certainly request to conduct their own discovery and would be required to respond to America West's requests, seriously delaying proceedings which have been pending for a significant time.

The State Defendants are correct that restarting the discovery period due to the addition of new parties would cause undue prejudice. The acts forming the basis for this litigation occurred more than twelve years ago—in 2008 and 2009. At the hearing, the State Defendants pointed out that in the intervening decade, witnesses have retired from the UFDI and the FDIC. At least one witness has died. Critical witnesses have otherwise become unavailable through incapacitation or moving overseas. And witnesses' memories have been negatively impacted by this passage of time. Extending the litigation would invariably worsen these problems. And there is no question that permitting America West to name new parties at this stage would significantly prolong the litigation.

America West itself implicitly acknowledges adding parties would require additional, new discovery. America West argued elsewhere that the FDIC has failed to sufficiently respond to its subpoena. (Pl.'s Mot. to Compel, Doc. No. 93.)) And the FDIC argued in response that its decisions as to what to produce are governed by its *Touhy* regulations. (Opp'n to Mot. to Compel, Doc. No. 101.) At the hearing on the instant motion, America West asserted that if the FDIC were added as a defendant, *Touhy* would no longer apply, and the FDIC would be required to produce everything. With this argument, America West implicitly concedes the addition of the FDIC would add substantial, extra discovery to the case. And that does not even account for the addition of Mr. Pittman to the case.

Where America West's motion to amend is denied on the grounds of undue delay and undue prejudice, it is unnecessary to consider the arguments raised by the FDIC or the State Defendants as to the futility of proposed amendment.

## CONCLUSION

America West's motion is unduly delayed and would cause undue prejudice. The working agreement does not provide an adequate reason for amendment and, even if it did, the amendment was sought at least five months after discovery of the document. Moreover, amendment would unduly prejudice the State Defendants in that adding new parties would re-start the entire discovery process in a case stemming from 2008 and 2009. Accordingly, America West's motion to amend is DENIED.

DATED this 26th day of August, 2021.

BY THE COURT:

*Daphne A. Oberg*
Daphne A. Oberg
United States Magistrate Judge