BARBARA KATRON (D.C. Bar No. 387970)
Senior Counsel
ANDREW J. DOBER (D.C. Bar No. 489638)
Counsel
Federal Deposit Insurance Corporation
3501 N. Fairfax Drive
Arlington, VA 22226
adober@fdic.gov

*Attorneys for the Federal Deposit Insurance Corporation, in its Corporate Capacity and in its Capacity as Receiver for America West Bank*

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| AMERICA WEST BANK MEMBERS,<br><br>Plaintiff,<br><br>v.<br><br>STATE of UTAH, UTAH DEPARTMENT OF FINANCIAL INSTITUTIONS, G. EDWARD LEARY, an individual, and JOHN DOES 1-20,<br><br>Defendants. | **FEDERAL DEPOSIT INSURANCE CORPORATION'S OPPOSITION TO MOTION TO COMPEL**<br><br>Case No: 2:16-cv-00326<br><br>Judge: Clark Waddoups<br><br>Magistrate Judge Daphne A. Oberg |

## TABLE OF CONTENTS

I.  Plaintiff's Second Motion to Compel Production of the Entire Contents of the Server Should be Denied With Prejudice ...................................................2

    A.  Plaintiff's Motion to Compel Production of the Server Disregards this Court's Previous Ruling and is Unduly Burdensome and Not Proportional to the Needs of the Case ...............................................................................2

    B.  Plaintiff is not the bank. ......................................................................6

II.  This Court Lacks Jurisdiction Over the Remainder of the Motion to Compel ...............................................................................................8

III.  Even if the Court had Jurisdiction, the Decisions at issue were not Arbitrary or Capricious ......................................................................................11

    A.  The decision to deny depositions was not arbitrary or capricious. .......................11

    B.  The redactions were not arbitrary or capricious. .................................15

    C.  FDIC's denial of the request for additional search terms was reasonable. ...........................................................................................16

CONCLUSION. ......................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Agility Pub. Warehousing Co. K.S.C. v. Dep't of Def.*,
    110 F. Supp. 3d 215 (D.D.C. 2015).........................................................................15

*Armstrong v. Arcanum Grp., Inc.*,
    250 F. Supp. 3d 802 (D. Colo. 2017) ................................................................8, 9

*BancInsure, Inc. v. FDIC*,
    796 F.3d 1226 (10th Cir. 2015)...........................................................................6-7

*Bullion Servs., Inc. v. Valley State Bank*,
    50 F.3d 705 (9th Cir. 1995)....................................................................................1

*Cabral v. U.S. Dep't of Justice*,
    587 F.3d 13 (1st Cir. 2009)...................................................................................12

*Ceroni v. 4Front Engineered Solutions, Inc.*,
    793 F. Supp. 2d 1268 (D. Colo. 2011) .............................................................9, 10

*Citizens' Comm. to Save Our Canyons v. Krueger*,
    513 F.3d 1169 (10th Cir. 2008).............................................................................11

*City of Huntington v. AmerisourceBergen Drug Corp.*,
    No. CV 3:17-01362, 2020 WL 4511490 (S.D. W.Va. Aug. 5, 2020)...............13, 14

*COMSAT Corp. v. Nat'l Science Found.*,
    190 F.3d 269 (4th Cir. 1999).................................................................................12

*Dababneh v. FDIC*,
    971 F.2d 428 (10th Cir. 1992).................................................................................1

*Davis Enters. v. EPA*,
    877 F.2d 1181 (3d Cir. 1989).................................................................................13

*Donald v. Outlaw*,
    No. 17-cv-32, 2020 WL 2899689 (N.D. Ind. June 2, 2020)..................................14

*FDIC-Receiver v. Durbano*,
    Case No. 09-cv-56 (D. Utah 2009)..........................................................................7

*Franklin Sav. Ass'n v. Dir., Office of Thrift Supervision,*
  934 F.2d 1127 (10th Cir. 1991) ......................................................................... 3, 5, 14

*HRI, Inc. v. EPA,*
  198 F.3d 1224 (10th Cir. 2000) ............................................................................... 11

*In re Gray,*
  162 F.2d 1172, 1998 WL 712663 (10th Cir. 1998) ................................................ 9

*James Madison Ltd. v. Ludwig,*
  82 F.3d 1085 (D.C. Cir. 1996) ...................................................................... 3, 5, 14

*Kansas v. Call,*
  961 F.2d 220 (table) (10th Cir. 1992) .................................................................... 9

*RLI Ins. Co. v. Nexus Services, Inc.,*
  No. 5:18-CV-00066, 2020 WL 1496466 (W.D. Va. Jan. 17, 2020) ....................... 12

*Sauer Inc. v. Lexington Ins. Agency, Inc.,*
  No. 5:13-CV-180-F, 2014 WL 5580954 (E.D.N.C. Oct. 31, 2014)........................ 12

*Saunders v. Great Western Sugar Co.,*
  396 F.2d 794 (10th Cir. 1968) ............................................................................ 8, 9

*SEC v. Selden,*
  445 F. Supp. 2d 11 (D.D.C. 2006) ......................................................................... 15

*Spence v. NCI Info. Sys., Inc.,*
  530 F. Supp. 2d 739 (D. Md. 2008)........................................................................ 13

*United States v. Nordic Vill. Inc.,*
  503 U.S. 30 (1992) ................................................................................................. 10

*United States v. Sherwood,*
  312 U.S. 584 (1941) ............................................................................................... 10

*United Western Bank v. OCC,*
  853 F. Supp. 2d 12 (D.D.C. 2012) ......................................................................... 15

*United Western Bank v. OCC,*
  928 F. Supp. 2d 70 (D.D.C. 2013) ..................................................................... 4, 14

*U.S. Dep't of Labor v. La Familia Corp.*,
   No. 10-2400-EFM-GLR, 2012 WL 1715359 (D. Kan. May 15, 2012) ............................ 15, 16

*U.S. Steel Corp. v. Mattingly*,
   663 F.2d 68 (10th Cir. 1980) ................................................................................................... 9

*U.S. Steel Corp. v. Mattingly*,
   89 F.R.D. 301 (D. Colo. 1980) ................................................................................................ 9

*Utah v. Gollaher*,
   No. 18-cv-309, 2019 WL 1013416 (D. Utah Mar. 4, 2019) ................................................. 8, 9

*Utah v. Ricks*,
   No. 2:16-cv-462-TS, 2016 WL 6090848 (D. Utah Oct. 18, 2016) ........................................... 9

*Westchester Gen. Hosp., Inc. v. Dep't of Health & Human Serv.*,
   443 F. App'x 407 (11th Cir. 2011) ....................................................................................... 13

*Wyoming ex rel. Crank v. United States*,
   539 F.3d 1236 (10th Cir. 2008) ............................................................................................ 11

**Statutes**

5 U.S.C. § 702 ............................................................................................................................ 10

12 U.S.C. § 303 ............................................................................................................................. 5

12 U.S.C. § 308 ............................................................................................................................. 5

12 U.S.C. § 1817 ........................................................................................................................... 4

12 U.S.C. § 1818 ........................................................................................................................... 5

12 U.S.C. § 1821 ........................................................................................................................... 6

12 U.S.C. § 4806 ........................................................................................................................... 5

28 U.S.C. § 2072 ......................................................................................................................... 10

12 C.F.R. § 309.6 ..................................................................................................................... 8, 14

**Rules**

Fed. R. Civ. P. 1 ........................................................................................................................... 6

Fed. R. Civ. P. 2 ..................................................................................................10

Fed. R. Civ. P. 34 ...........................................................................................8, 14

Fed. R. Civ. P. 45 .......................................................................................4, 8, 10

Fed. R. Civ. P. 72 ...............................................................................................12

Fed. R. Civ. P. 82 ...............................................................................................10

**Other Authorities**

11 Am. Jur. 2d Banks and Financial Institutions § 1034 ............................................7

The Federal Deposit Insurance Corporation (FDIC, encompassing all FDIC capacities), in its corporate capacity (FDIC-Corporate), and in its capacity as receiver for America West Bank (FDIC-Receiver), oppose Plaintiff's latest motion to compel (Mot.).[1] D.E. 198.  Plaintiff moves to compel: (1) the production of the entire contents of a server containing over a million bank records that, pursuant to federal law, are property of FDIC-Receiver; (2) the deposition of 28 current and former FDIC employees as well as a 30(b)(6) deposition covering 17 topics; (3) the removal of redactions of PII and privileged information applied to documents produced by FDIC-Corporate pursuant to a *Touhy* request; and (4) the FDIC to conduct additional electronic searches of its records.  The motion should be denied with prejudice for the following reasons:
First, Plaintiff's motion to compel the server ignores this Court's previous ruling denying the same motion and stating that any future motion must be far more targeted and is unduly burdensome and not proportional to the needs of the case.  Second, the motion to compel the server is based on the false premise that Plaintiff is the bank and owns the documents.  That premise is directly contrary to federal law.

Third, the Court lacks jurisdiction over the remaining components of the motion as they pertain to *Touhy* decisions regarding the disclosure of agency records and the depositions of agency personnel and are only subject to judicial review pursuant to the Administrative Procedures Act (APA).  Fourth, even if this Court had jurisdiction, the FDIC's decisions were

---

[1] The FDIC in its corporate capacity (deposit insurer and bank supervisor) and the FDIC as receiver (liquidator) are separate capacities; actions taken or obligations assumed by the FDIC in one capacity are not attributable to the other capacity. *Dababneh v. FDIC*, 971 F.2d 428, 432 (10th Cir. 1992); *see Bullion Servs., Inc. v. Valley State Bank*, 50 F.3d 705, 708-09 (9th Cir. 1995) ("FDIC Corporate and FDIC Receiver perform two different functions and protect wholly different interests," and thus their rights and liabilities are "legally separate").

1

not arbitrary and capricious.  Plaintiff requested 29 depositions. It was not unreasonable to deny cumulative, unduly burdensome requests for irrelevant information available from other sources. Moreover, case law from this circuit militates against far-reaching, extra-record discovery in bank failure challenge cases.  Fifth, it is not arbitrary and capricious for a non-party to redact the PII and financial information of other non-parties as well as privileged information.  Sixth, the FDIC's denial of Plaintiff's request to use additional search terms was not arbitrary and capricious.  The FDIC already devoted substantial resources to reviewing and producing 347 documents totaling 2,566 pages focused on communications between the bank, the FDIC, and UDFI in the 18 months leading up to the bank's failure and had authorized the production of over 500 additional documents totaling over 2,500 pages.  The search terms generated sufficient hits and it would be unduly burdensome for the agency to conduct additional searches.

    I.    **Plaintiff's Second Motion to Compel Production of the Entire Contents of the Server Should be Denied With Prejudice.**

        A.  **Plaintiff's Motion to Compel Production of the Server Disregards this Court's Previous Ruling and is Unduly Burdensome and Not Proportional to the Needs of the Case.**

This is the second time Plaintiff has sought production of the server.  D.E. 93.  In its order denying Plaintiff's first motion, this Court stated:

> In the event America West and the FDIC cannot agree as to the document production after this meaningful meeting and conferral, any future discovery motion must be much more specific as to which documents, or categories of documents are sought, why the request is relevant and proportional, and why any objections lack merit.

D.E. 142 at 3.  This ruling is consistent with Rule 45 which states that a party issuing a subpoena "must" take reasonable steps to avoid imposing an undue burden on the subpoenaed entity and courts "must" enforce this duty on a party or attorney who fails to comply. Fed. R. Civ. 45(d)(1).

Instead of heeding this ruling and complying with Rule 45 by meaningfully narrowing its request for all bank documents, Plaintiff responded to the Court's order counseling it to be "much more specific" by propounding 74 document requests accompanied by 104 search terms that effectively requested all of the bank's documents, again. *See* Appendix 1 (samples of the search terms and requests); Ex. 1.[2]

The FDIC ran 13 of the 104 search terms through its database of 16 million bank documents, generating a hit count of approximately 150,000 documents. Ex. 2. Running the remainder of the terms would have yielded millions of hits. The FDIC then requested a narrowed down list of up to 30 search terms and offered to run the search terms on the server as well if plaintiff paid the $21,000 cost to place its contents in a searchable platform (i.e. an ediscovery platform).[3]  *Id.*  Plaintiff provided 46 search terms, including phrases such as "Manhattan" and "Jeffrey Clark" and declined to provide the funds to render the contents of the server searchable. Ex. 3. The FDIC ran the 46 terms through its database of 16 million documents. This yielded 37,000 hits, an unduly burdensome and disproportionate amount of documents to review. Ex. 4.

Now, Plaintiff has again moved to compel the production of the entire contents of the server—millions of documents—exactly what this Court and Rule 45 stated it should not do. While this Court denied the previous motion without prejudice, this denial should be with prejudice. The narrow issue in this case is whether UDFI was arbitrary and capricious in seeking an order authorizing it close the bank and the Court has already delineated the four bases for

---

[2] Full list of 104 included in Exhibit 1.
[3] Although not at issue in this motion, the server is not "reasonably accessible." Fed. R. Civ. P. 45(e)(1)(D).

closure. D.E. 64 (SJ Op.) at *5-7.  As explained by the Tenth Circuit, that does not involve

massive productions of documents, much less bank documents—it involves review of an

administrative record.  *Franklin Sav. Ass'n v. Dir., Office of Thrift Supervision*, 934 F.2d 1127,

1150-51 (10th Cir. 1991); *see also James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1096 (D.C. Cir.

1996); *United Western Bank v. OCC*, 928 F. Supp. 2d 70 (D.D.C. 2013).  Voluminous public

bank documents are available for experts to review, namely the bank's own call reports and the

Uniform Bank Performance Reports (UBPR) and the FDIC has already produced or authorized

the production of hundreds of documents.[4]  Thus, Plaintiff's argument that the bank's records are

the "crucial evidence" is wrong.  Mot. at 2.  But even if some bank records were "crucial,"

Plaintiff is not seeking a targeted universe of records, it is again seeking everything.

Plaintiff argues that the proper solution is for this Court to order production of

everything pursuant to a protective order.  Mot. at 5-6. That way, the FDIC would not have to

review anything.  *Id.*  This argument could be applied to justify the production of every single

document in any litigant's—or third party's—possession.  It will always be the case that simply

producing everything—a digital document dump—will be less burdensome than reviewing

documents; just create an electronic copy of all files, execute a protective order, and transfer the

contents to the requesting party.  That is, however, not the law.  If it were, common legal

concepts set forth in federal statutes and the Federal Rules of Civil Procedure such as

proportionality, relevance, undue burden, confidentiality, and privilege would be non-existent.

---

[4] Call reports are submitted quarterly and, pursuant to federal law, their accuracy is attested to by multiple individuals in leadership positions within the bank.  *See* 12 U.S.C. § 1817(a)(3) ("Each said report of condition shall contain a declaration by the president, a vice president, the cashier or the treasurer, or by any other officer designated by the board of directors or trustees of the reporting depository institution to make such declaration, that the report is true and correct to the best of his knowledge and belief.").

Indeed, Fed. R. Civ. P. 45 would not exist.  The argument also ignores that the documents may contain SARs or SAR related information that cannot be produced pursuant to federal law, PII of non-parties, non-public financial information of non-parties and privileged and/or confidential information of the party in possession of the records.

Finally, Plaintiff argues that without all the bank's records it is "precluded from presenting expert testimony challenging the results of the 2008 and 2009 Reports of Examination and demonstrating that the results were manipulated and contrived to produce a predetermined outcome" and that its expert needs to review all of the bank's records.  Mot. at 5-6.  As the Tenth Circuit stated, bank failure challenges are not battles of the experts to begin with.  *Franklin*, 934 F.2d at 1150-51 ("The district court first improperly expanded its scope of review as it allowed testimony by Franklin's experts giving opinions on such matters as acceptable levels of brokered deposits and high-risk assets.").  The D.C. Circuit reached a similar conclusion in *James Madison*:

> Generally speaking, district courts reviewing agency action under the APA's arbitrary and capricious standard do not resolve factual issues but operate instead as appellate courts resolving legal questions. Like appellate courts, district courts do not duplicate agency fact-finding efforts. Instead, they address a predominantly legal issue: Did the agency 'articulate a rational connection between the facts found and the choice made'?

82 F.3d at 1096.  Even if expert testimony were permissible, there is voluminous publicly available information and thousands of already produced documents for experts to review. Plaintiff's argument also ignores the fact that there are statutorily required mechanisms for

challenging examination findings.[5]  Those processes have been invoked by hundreds of banks but never by AWB and its shareholder cannot do so here.

Nor is this Court well situated to review individual loan files and second-guess examiner's judgments (made 12 or more years prior) on the classification of those loans, as Plaintiff apparently expects the Court to do.  That exercise bears no resemblance to the limited inquiry that Judge Waddoups set forth in his summary judgment opinion.  D.E. 64.  And nothing in the law on challenges to bank failures suggests that courts evaluating such challenges should take on the role of Monday morning quarterbacks as to the pre-failure supervision of the bank.

A fishing expedition does not become justified because a plaintiff claims that it is needed for expert testimony and Plaintiff cites no case law tying discovery to purported expert needs. The touchstone of discoverable information is relevance, proportionality, and burden.  Plaintiff's proposal to indiscriminately transfer millions of documents to its possession does not meet those standards and review of those documents would significantly drive up the costs of this litigation for all involved.  *Accord* Fed. R. Civ. P. 1 (Rules should be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

### B.  Plaintiff is not the bank.

Plaintiff's motion should also be denied because it continues to conflate itself with the bank and argue that it is seeking the return of its documents.  Mot. at 2 ("the server was "expressly created by Plaintiff."), 3 ("the FDIC refuses to produce the 1TB server … to the Bank

---

[5] *See* 12 U.S.C. § 4806 (Regulatory Appeals Process); Appeals of Material Supervisory Determinations, https://www.fdic.gov/resources/regulations/appeals-of-material-supervisory-determination/index.html; 12 U.S.C. § 1818(b) (enforcement procedures for cease-and-desist actions); 12 U.S.C. §§ 303, 308.

itself[;]"), 4 ("It is both imperative and essential that the Bank's financial records be returned to Plaintiff.").

These assertions are manifestly false.  Pursuant to federal law, upon failure of the bank the records belong to the receiver.  12 U.S.C. §1821(d)(2)(A)(i-ii) (FDIC-Receiver succeeds to AWB's "rights, titles, powers and privileges" as well as "title to the books and records" of the institution); *BancInsure, Inc. v. FDIC*, 796 F.3d 1226, 1235 (10th Cir. 2015) ("By statute, the FDIC–R succeeds to "all rights, titles, powers, and privileges" of not only a failed bank, but also "any stockholder, ... accountholder, [and] depositor" of the institution."). 11 Am. Jur. 2d Banks and Financial Institutions § 1034 ("General Powers of Conservator or Receiver of Insolvent Bank).

The server contains over a million bank files including privileged and confidential documents and customer personal and financial information.  *See FDIC-Receiver v. Durbano*, Case No. 09-cv-56 (D. Utah 2009), D.E. 5, 7, 10.  FDIC-Receiver had to file suit because Mr. Durbano absconded with the server and refused to return it.  *Id.* at D.E. 1, 2, 3, 5, 7.  Judge Kimball ordered its return on May 4, 2009.  *Id.* at D.E. 9 ("Defendants Douglas M. Durbano and the Durbano Law Firm, P.C., along with all persons in concert or active participation with either of them shall, upon being served with this Order immediately deliver to either counsel for the FDIC or to [FDIC-Receiver] . . . any copy . . . of America West Bank's software, or data, including but not limited to customer [PII].").  The server was not returned, necessitating additional filings by FDIC-Receiver and another hearing the following day.  *Id.* at D.E. 12-15 (Motion for Seizure and Impoundment).  At that hearing, Judge Kimball ordered Mr. Durbano to

return the server by noon the following day, *id.* at D.E. 17, ¶ 2, and stated he would send U.S.

Marshals to retrieve the items if the server was not returned.

After it was returned, FDIC-Receiver provided detailed indices *in 2009*, *id.* at D.E. 17 ¶¶

6-12, and a stipulation provided for requesting records with specificity, including any of

Plaintiff's records, further recognition that Plaintiff is not the Bank:

> Mr. Durbano and his counsel will analyze the inventories and sub-inventories provided
> by the FDIC and will notify the FDIC's counsel in writing of any files or folders that Mr.
> Durbano claims belong to the bank holding company or to the Durbano law firm and thus
> that he believes should be returned to him.

*Id.* at D.E. 17, ¶ 13.  Plaintiff never sought any records pursuant to the stipulation and index

provided.  It cannot do so now under the fallacious theory that it is the Bank.  And even if

Plaintiff were permitted to stand in the shoes of the bank, the blunderbuss subpoena issued here

would not be proper, as it is untethered to the case and would require an enormously burdensome

undertaking to review and redact customer and BSA information alone, not to mention

potentially privileged documents.  *See* Fed. R. Civ. P. 34(b)(1)(A) ("reasonable particularity"

standard); 12 C.F.R. § 309.6(b)(8)(i) (same); Fed. R. Civ. P. 45(d)(1),(3)(A).

**II.    This Court Lacks Jurisdiction Over the Remainder of the Motion to Compel.**

In addition to seeking millions of bank records, Plaintiff moves to compel the production

of documents, additional electronic searches of agency records, and 29 depositions.  Mot. at 6-

15.  These arguments pertain to agency personnel and agency records and are governed by the

FDIC's *Touhy* regulations, codified at 12 C.F.R. § 309.6.

As explained at the conclusion of each FDIC *Touhy* decision, a party seeking to compel a

nonparty agency to produce a deponent or agency records must seek APA review.  *Saunders v.*

*Great Western Sugar Co.*, 396 F.2d 794, 795 (10th Cir. 1968); *Utah v. Gollaher*, No. 18-cv-309,

2019 WL 1013416, at *3 (D. Utah Mar. 4, 2019); *Armstrong v. Arcanum Grp., Inc.*, 250 F. Supp. 3d 802, 805-06 (D. Colo. 2017) (Plaintiff required to file APA action after denial of *Touhy* request.).  In *Saunders*, the Tenth Circuit vacated a district court order compelling the SBA to respond to subpoenas after the agency had declined to allow the disclosure of information pursuant to their *Touhy* regulations.  396 F.2d at 794-95.  The Tenth Circuit stated it was "bound by *Touhy*" and held that a separate APA action had to be filed.  In *Mattingly*, the district court ordered an employee of the Bureau of Standards—a federal agency—to comply with a subpoena for testimony although the subpoenaing party had not complied with the agency's *Touhy* Regulations.  *U.S. Steel Corp. v. Mattingly*, 89 F.R.D. 301, 302 (D. Colo. 1980).  The Tenth Circuit reversed and held that the district court had erred in enforcing a subpoena to a federal agency and its employee.  *U.S. Steel Corp. v. Mattingly*, 663 F.2d 68 (10th Cir. 1980).  It directed the district court to recall the subpoena and "dismiss all proceedings with regard" to the subpoena.  *Id.*  The Tenth Circuit has continued to apply *Touhy*, *Mattingly*, and *Sanders*.  *See In re Gray*, 162 F.2d 1172, 1998 WL 712663, at *1 (10th Cir. 1998); *Kansas v. Call*, 961 F.2d 220 (table) (10th Cir. 1992); (same).

Plaintiff argues that this Court may review the discovery dispute in this pending action pursuant to *Ceroni v. 4Front Engineered Solutions, Inc.*, 793 F. Supp. 2d 1268 (D. Colo. 2011).  Mot. at 10-13.  *Ceroni* is, with all respect, inconsistent with the law in this Circuit and with opinions in this District.  *Gollaher*, 2019 WL 1013416, at *3; *Utah v. Ricks*, 2:16-cv-462-TS, 2016 WL 6090848, at *2 (D. Utah Oct. 18, 2016) (denying motion to compel Social Security Administration to comply with *subpoena duces tecum* for lack of jurisdiction; litigant required to pursue APA action).  It has not been followed in its own District.  *Armstrong v. Arcanum Group,*

*Inc.*, 250 F. Supp. 3d 802, 806 (D. Colo. 2017) ("Magistrate Judge Boland's opinion in *Ceroni* is the most recent decision, the court is not bound to follow its holding. It is an outlier compared to the rest of the cases in this district, which are in accord with the Tenth Circuit's reasoning in *Gray*.").

      *Ceroni* held that Fed. R. Civ. P. 45 operated as a waiver of sovereign immunity.  793 F. Supp. 2d at 1276.  But it is well established that the federal rules do not operate as a waiver of sovereign immunity.  *See* Fed. R. Civ. P. 82 ("These rules do not extend or limit the jurisdiction of the district courts"); 28 U.S.C. § 2072(b) ([The Federal Rules] "shall not abridge, enlarge or modify any substantive right."); *United States v. Sherwood*, 312 U.S. 584, 589-90 (1941) (Federal Rules do not authorize a suit against the United States to which it has not consented). The APA only waives the United States' sovereign immunity in an "*action in a court of the United States* seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority...." 5 U.S.C. § 702 (emphasis added). Because this waiver must be construed strictly in the United States' favor, *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 33 (1992), expanding it to include subpoena enforcement proceedings in federal court where the government is not a party would violate that principle and, in any event, the underlying action neither requests injunctive relief against the United States, nor states a claim that a federal agency or officer or employee thereof acted or failed to act in an official capacity or under color of legal authority; this is an action seeking money damages, another disqualifying feature under 5 U.S.C. § 702.

*See also* Fed. R. Civ. P. 2 (defining a civil "action" as a lawsuit).[6]

### III. Even if the Court had Jurisdiction, the Decisions at issue were not Arbitrary or Capricious.

*A. The decision to deny depositions was not arbitrary or capricious.*

Assuming, *arguendo* that this Court were to follow *Ceroni*, the standard of review is supplied by the APA.  Under the APA, FDIC's determination would be upheld unless arbitrary and capricious, a bar Plaintiff cannot clear.  *HRI, Inc. v. EPA*, 198 F.3d 1224, 1241 (10th Cir. 2000).  "A presumption of validity attaches to the agency action and the burden of proof rests with the appellants who challenge such action." *Citizens' Comm. to Save Our Canyons v. Krueger*, 513 F.3d 1169, 1176 (10th Cir. 2008). A *Touhy* decision is arbitrary and capricious only if it "relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Wyoming ex rel. Crank v. United States*, 539 F.3d 1236, 1244 (10th Cir. 2008).

On May 25, 2021, Plaintiff submitted a request to depose 28 current or former FDIC employees. Ex. 9. The request did not include any individualized information on any of the 28 individuals.  It did not say what the relevance of their testimony was to the case.  It did not address whether information could be sought from other sources.  It merely requested their deposition, largely without explanation. *Id.*  The FDIC issued a decision denying the request on

---

[6] Even if the *Ceroni* decision was correct—and it is not—it would apply only to the requests for testimony, not to the requests for documents. 793 F. Supp. 2d at 1274 (as to documents, "the defendant may challenge the decision of the General Counsel only by serving him or her personally with the subpoena and moving to compel in the district where the General Counsel is found and served").

June 11, 2021.  Ex. 10.  The FDIC's denial rested on the lack of specific information about any

individual, undue burden, relevance and the ability to obtain information from other sources.  Ex.

10 at 6-10.  Similarly, on April 9, 2021, Plaintiff submitted a *Touhy* Request seeking to depose a

30(b)(6) witness on 17 topics with essentially no justification for the bulk of the topics

identified.[7]  Ex. 6.  On April 22, 2021, the FDIC denied the request while the motion to amend

was pending.  Ex. 7.  On August 26, 2021, this Court denied Plaintiff's motion to amend to name

FDIC-Corporate and FDIC-Receiver.  D.E. 190.  The time for appealing that decision expired on

September 9, 2021.  Fed. R. Civ. P. 72.  On September 14, 2021, the FDIC issued its decision

addressing Plaintiff's *Touhy* Request.  Ex. 8.  The denial rested on the undue and cumulative

burden, relevance, the ability to obtain information from other sources, the lack of specific

information for each topic and Plaintiff's repeated admission that the information sought is for

purposes other than the causes of action in the present lawsuit.  *Id.* at 5-10.

Courts routinely recognize that an agency's refusal to comply with a subpoena on the

grounds of undue burden is neither arbitrary nor capricious:

> When an agency is not a party to an action, its choice of whether or not to comply with a
> third-party subpoena is essentially a policy decision about the best use of the agency's
> resources…. Compliance with the third-party subpoenas issued in this single case, where
> the litigant sought a tremendous number of agency documents and demanded the
> presence of agency employees at depositions, would measurably strain agency resources
> and divert NSF personnel from their official duties.

*COMSAT Corp. v. Nat'l Science Found.*, 190 F.3d 269, 278 (4th Cir. 1999).[8]  The FDIC had

already reviewed and produced hundreds of documents pursuant to an earlier *Touhy* request.

---

[7] Plaintiff's motion incorrectly states that Plaintiff noticed eleven topics.  Mot. at 14.

[8] *See also Cabral v. U.S. Dep't of Justice*, 587 F.3d 13, 23-24 (1st Cir. 2009) ("[T]he DOJ reasonably
concluded that further disclosures ... would have been cumulative and unduly burdensome."); *RLI Ins. Co.
v. Nexus Services, Inc.*, 5:18-CV-00066, 2020 WL 1496466, at *3 (W.D. Va. Jan. 17, 2020) (neither

Exs. 6 at 7-8, 8 at 2, 5, 7; *see Davis Enters. v. EPA*, 877 F.2d 1181, 1187 (3d Cir. 1989)

("Notwithstanding [the] argument that [an agency employee]'s deposition...would only take a

minimal amount of time, there is no guarantee that cross-examination would not be

lengthy....Moreover, [the requesting party]'s argument about the minimal burden in this case

fails to take into account the EPA's legitimate concern with the potential cumulative effect of

granting such requests....Its concern about the effects of proliferation of testimony by its

employees is within the penumbra of reasonable judgment decisions it may make.").[9]  The FDIC

also properly considered the fact that no witness testimony was necessary in the other bank

failure challenge cases, that in those cases the challenging entity had actually complied with the

statutory time limit for filing a challenge, and that supplying witnesses here could prompt future

litigants to ignore challenge statutes.  Ex. 8 at 4-6.[10]

---

arbitrary nor capricious where one stated reason for denial of discovery request was "compliance would be unduly burdensome"); *Sauer Inc. v. Lexington Ins. Agency, Inc.*, No. 5:13-CV-180-F, 2014 WL 5580954, at *6 (E.D.N.C. Oct. 31, 2014) ("The Army Corps states that it had already expended significant time and effort to comply with Defendant's earlier document subpoena, and believed that information to be sufficient to comply with Defendant's requests for information.... Here, the Army Corps considered the burden of complying with this additional request from Defendant, and determined that not complying with the deposition subpoena would conserve governmental resources where the United States is not a party to a suit, and to minimize governmental involvement in controversial matters unrelated to official business.") (internal quotation and citation omitted); *Spence v. NCI Info. Sys., Inc.*, 530 F. Supp. 2d 739, 745 (D. Md. 2008) (no violation of APA where discovery request was denied "on grounds of undue burden").

[9] *See also City of Huntington v. AmerisourceBergen Drug Corp.*, No. CV 3:17-01362, 2020 WL 4511490, at *6 (S.D. W.Va. Aug. 5, 2020) ("As the case law makes clear, the Air Force was entitled to consider the cumulative effect of granting similar requests." (citing *Spence v. NCI Info. Sys., Inc.*, 530 F. Supp. 2d 739, 745-46 (D. Md. 2008) ("federal agencies must be permitted to consider the precedential effects of granting individual discovery requests."))).

[10] Plaintiff's long delay also exponentially increased the potential burden on the agency in responding to the request as it has been twelve years since the failure and there has been significant, if not total, loss of institutional memory through retirement and the passage of time.

The FDIC also properly considered the fact that the information sought is available from other sources. Ex. 8 at 8. *Westchester Gen. Hosp., Inc. v. Dep't of Health & Human Serv.*, 443 F. App'x 407 (11th Cir. 2011) (per curiam) (agency statements "demonstrate it considered the relevant factors, as presented in [the plaintiff]'s letter, and arrived at a rational conclusion that the information was available from other sources."); *Donald v. Outlaw*, No. 17-cv-32, 2020 WL 2899689, at *12 (N.D. Ind. June 2, 2020) (upholding agency denial where information was available from other sources); *City of Huntington*, 2020 WL 4511490, at *6-7 (same). Thousands of documents have been produced and voluminous information about the bank's financial condition is publicly available. Ex. 8 at 8. Plaintiff has deposed or is deposing numerous UDFI managers and examiners, including the examiner-in-charge of the 2009 examination—the final examination prior to the bank failing—other examiners and UDFI management.[11]

Moreover, FDIC regulations require the requesting party to specify the testimony sought "with reasonable particularity." 12 C.F.R. § 309.6(b)(8)(i); *accord* Fed. R. Civ. P. 34. The request for 28 witnesses did not differentiate between any of the 28; they were treated as one entity. Ex. 10 at 6. The stated rationale for 14 of the 17 requested 30(b)(6) topics was simply: "This topic is relevant to prove or disprove the Plaintiff's claims that the bank was seized arbitrarily." Ex. 8 at 7.[12]  Finally, the FDIC decision considered Plaintiff's counsel repeated

---

[11] It is unlikely that deposition testimony is relevant here. As discussed above, in *Franklin*, the Tenth Circuit reversed a District Court decision that rested on broad discovery in a bank failure challenge and included cautionary language about the proper scope of discovery and review in these cases. 934 F.2d at 1150-51; *see also James Madison Ltd. v. Ludwig*, 82 F.3d 1085 (D.C. Cir. 1996); *United Western*, 928 F. Supp. 2d at 83.
[12] The other three contained an additional sentence that provided no other meaningful information. Ex. 8 at 7.

statements that the true motivation of the discovery he seeks is not for purposes of adjudicating the actual lawsuit before the court—which presents a narrow issue—but rather to continue to file frivolous, time barred suits against FDIC personnel.  Ex. 8 at 8-9.[13]

B.  *The redactions were not arbitrary or capricious.*

Plaintiff also moves to compel the FDIC to remove redactions of PII and privileged information. Mot. at 6.  The FDIC's decision to redact PII, including about bank borrowers and customers, was not arbitrary or capricious, it was responsible.  Ex. 15.  Protective order aside, this case does not warrant compelling a non-party to provide financial information and PII about other non-parties, many of whom are individuals in the community.  Nor would disclosing the specific loans transferred to an acquiring bank, or retained by the FDIC, allow Plaintiff to "evaluate the classification made during the Reports of Examination and assess the value of the Bank as of the date of seizures," as Plaintiff claims.  Mot. at 7.

The other set of redactions at issue pertains to the FDIC's least cost test, a highly confidential formula for determining the potential cost of a failure.  If bidders obtained information about the process, that could help them game the system.  Thus, information pertaining to least cost analysis is protected by the deliberative process privilege.  *See United Western Bank v. OCC*, 853 F. Supp. 2d 12, 18-19 (D.D.C. 2012).  Denying a *Touhy* request that seeks privileged information is not arbitrary or capricious.[14]  Plaintiff's unfounded speculation

---

[13] *See also* Aug. 26, 2021 Hrg. Tr. 28:12-18 ("So yes, we think that no privilege should apply in summation, because of the fraud, tortious behavior, criminal acts, underlying cases, the postmortem. And yes, we are on -- and I think I've been accused of being on a crusade, I'll take it.").

[14] *Agility Pub. Warehousing Co. K.S.C. v. Dep't of Def.*, 110 F. Supp. 3d 215 (D.D.C. 2015) (DOD *Touhy* denial based on deliberative process privilege upheld); *SEC v. Selden*, 445 F. Supp. 2d 11, 12 n.3 (D.D.C. 2006) (quashing subpoena to FDA seeking documents "exempt from public disclosure by the deliberative process privilege").

that the FDIC did not rely on the examination conclusions when it conducted the least-cost analysis, Mot. at 9, was never presented to the agency and, in any event, is not sufficient grounds for overriding the privilege.[15]

### C.  FDIC's denial of the request for additional search terms was reasonable.

The FDIC produced 375 emails and other documents totaling over 2,500 pages.  Ex. 12 at 1, D.E. 101-5.  It searched 16 custodians over the 18-month timespan leading up to the Bank's failure.  Exs. 12 at 10-11; 15 at 1-2.  Plaintiff requested the FDIC reopen its determination and run an additional 12 search terms over a 30-month timespan.  Ex. 13 at 2.  It was not arbitrary or capricious to deny the request to reopen as it would impose an undue burden on the agency to review, redact, and produce even more documents and the documents sought were not relevant, or at best, tangentially relevant to this case.  Ex. 14 at 2.

## CONCLUSION

The Court should deny the motion to compel production of the server and the millions of documents it contains with prejudice.  The FDIC reserves its rights to seek an "appropriate sanction" under Fed. R. Civ. P. 45(d)(1) for the repetitive motion and the unduly burdensome request. The Court should deny the remainder of the motion to compel for lack of jurisdiction.

Respectfully submitted,

/s/ Andrew J. Dober
ANDREW J. DOBER (D.C. Bar No. 489638)
Counsel

---

[15] In the event that the Court determines that it has jurisdiction on this issue, the FDIC respectfully requests – before a ruling is issued -- the opportunity to submit a sworn statement from a senior FDIC official explaining the bases for the privilege claim.  *See U.S. Dep't of Labor v. La Familia Corp.*, No. 10-2400-EFM-GLR, 2012 WL 1715359, at *6 (D. Kan. May 15, 2012) (providing for submission of supplemental information on privilege claim after threshold issues addressed).

BARBARA KATRON (D.C. Bar No. 387970)
Senior Counsel
Federal Deposit Insurance Corporation
3501 N. Fairfax Drive
Arlington, VA 22226
adober@fdic.gov

## CERTIFICATE OF SERVICE

On September 22, 2021, I filed the foregoing Opposition to Motion to Compel with the Clerk of Court using the CM/ECF system.

/s/ Andrew J. Dober