UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| AMERICA WEST BANK MEMBERS, L.C., <br><br> Plaintiff, <br><br> v. <br><br> STATE OF UTAH; UTAH DEPARTMENT OF FINANCIAL INSTITUTIONS; G. EDWARD LEARY, an individual; and JOHN DOES 1-20, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION TO COMPEL FDIC COMPLIANCE WITH SUBPOENA (DOC. NO. 198)** <br><br> Case No. 2:16-cv-00326-CW-DAO <br><br> Judge Clark Waddoups <br><br> Magistrate Judge Daphne A. Oberg |

America West Bank Members, L.C. ("America West") brought this action against Defendants State of Utah, Utah Department of Financial Institutions ("UDFI"), and G. Edward Leary (collectively, the "State Defendants"), asserting violations of due process and substantive due process, unconstitutional takings, and claims under 42 U.S.C. § 1983 and § 1988. (Am. Compl., Doc. No. 33.) Now before the court is America West's Motion to Compel FDIC Compliance with Subpoena for the Production of Documents and to Designate a Rule 30(b)(6) Representative for Deposition, ("Mot.," Doc. No. 198). This motion pertains to two types of documents: bank records of America West Bank and documents of the Federal Deposit Insurance Corporation (the "FDIC"), and requests the designation of a Rule 30(b)(6) witness. These requests stem from America West's subpoena to the FDIC, which was also the subject of a prior motion to compel, (*see* Doc. No. 93).[1] The court heard argument on this motion on

---

[1] The subpoena is not attached to America West's current motion. It was, however, attached as Exhibit A to America West's prior motion to compel. (Ex. A, Doc. No. 93-2.) The court denied

1

October 18, 2021. (*See* Doc. No. 227.) For the reasons stated below, America West's motion to compel is denied.

BACKGROUND

America West's Complaint arises out of what it describes as the improper seizure of America West Bank. According to America West, as of 2007, the bank received good CAMELS[2] ratings from its regulatory reviews. (Am. Compl. 3, Doc. No. 33.) Then, in early 2008, the FDIC and the UDFI changed their temperament toward the bank and the relationship became hostile and aggressive. (*Id.* at 4.) Despite improved performance from 2007 to 2008, America West received very low ratings on its 2008 review. (*Id.* at 5.) America West attributes the change in ratings to a new group of regulators who applied different and incorrect standards and methodologies. (*Id*. at 5–6.) Had the FDIC and the UDFI used proper standards, America West contends the reports would have been markedly different. (*Id*. at 7.) America West believes the FDIC wanted to end America West's member banking concept, (*id.* at 4–5), and used the manipulated CAMELS scores as a basis to seize the bank, (*id.* at 12).

On May 1, 2009, Commissioner Leary, acting on behalf of the UDFI, petitioned the State Court of Utah for an order granting possession of the Bank. (*Id*. at 9.) America West asserts Commissioner Leary could not have believed possession was warranted and, in fact, knew or should have known possession was improper—because the UDFI knew its reports were

---

that prior motion without prejudice because America West did not establish the sixteen million bank records were relevant or proportional to the needs to the case. In addition, the parties had not fully briefed whether the court had jurisdiction over the remainder of the document requests. (Order, Doc. No. 142.)

[2] CAMELS is an acronym which stands for Capital adequacy, Asset quality, Management, Earnings, Liquidity, and Sensitivity. (Am. Compl. 3 n.1, Doc. No. 33.) A bank receives a numerical score of one to five in each category, as well as an overall composite score, one being the best and five being the worst. (*Id.*)

incorrect. (*Id.* at 11–12.) Specifically, America West alleges "Commissioner Leary facilitated the FDIC's plan to take down the Bank, as UDFI worked with the FDIC" to use new, incorrect methodologies to create grounds for seizing the bank's assets. (*Id*. at 12.) The court granted the petition and appointed the FDIC as the bank's receiver, while Cache Valley Bank took over the depositor accounts. (*Id.* at 16.)

ANALYSIS

I. *Bank Records*

This is America West's second motion to compel the bank records identified in Request Number 10 of its subpoena.[3] The bank records consist of millions of documents, including financial records and loan files. (Mot. 2, Doc. No. 198.) These documents are crucial evidence, according to America West, as they were examined in the 2008 and 2009 Reports of Examination ("ROE") which led to the downgraded CAMELS rating. (*Id.*) America West argues that without these documents, it will be precluded from establishing the results of the ROEs were manipulated. (*Id.*) The FDIC objects to the motion,[4] arguing the documents are unnecessary to the determination of the case, the request is unduly burdensome on its face, and production of documents pursuant to America West's proposed search terms would be unduly burdensome. (FDIC Opp'n to Mot. to Compel ("FDIC Opp'n"), Doc. No. 215.)

---

[3] Request 10, entitled "Bank Records and Equipment Seized by the FDIC," seeks "Documents identifying the location of all AWB's bank records that were seized and produce the same[;] Documents identifying the location of AWB's seized computers, servers, or other electronic equipment and produce the same[; and] Documents describing any post-seizure investigations or reports of AWB's bank records and produce the same." (Ex. A, Doc. No. 93-2.)

[4] The State Defendants also object to the motion. (Opp'n to Pl.'s Mot. to Compel FDIC Compliance with Subpoena for the Production of Docs. and to Designate a Rule 30(b)(6) Representation [198], Doc. No. 211.) They argue America West's actions cause prejudice to them by unreasonably delaying the case. (*Id.*)

3

The scope of relevance at the discovery stage is broad. Parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). When determining whether the discovery is proportional to the needs of a case, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Information need not be admissible to be discoverable. *Id.* Rule 45 of the Federal Rules of Civil Procedure requires a party issuing a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and directs courts to "enforce this duty." Fed. R. Civ. P. 45(d)(1).

It is undisputed that the bank records at issue are located in two locations: (1) on a one terabyte server created by Douglas Durbano in the event the bank was seized, and (2) in an FDIC database containing certain bank documents copied by the FDIC. The server, which was the subject of a separate action in this district,[5] is in the FDIC's possession. (Mot. 2, Doc. No. 198.) America West first contends the court should order a "return" of the documents from the server. (*Id.* at 3–4.) But this contention fails as a matter of law and of fact. Legally, America West offers no authority disputing that the FDIC, as receiver, now holds the bank's "title to the books and records." *See* 12 U.S.C. § 1821(d)(2)(A)(ii). Factually, America West is not the same entity

---

[5] The server was the subject of *Federal Deposit Insurance Corporation v. Durbano*, 1:09-cv-00056-CW-DAO (D. Utah) ("*Durbano*"). In *Durbano*, the court issued a temporary restraining order requiring the bank's documents, including the server, be turned over to the FDIC. (*See Durbano*, Doc. Nos. 10, 11.) The parties filed a stipulation and motion to strike preliminary injunction hearing, which included details as to how and when bank records were turned over to the FDIC. (*Durbano*, Doc. No. 17.) As part of the stipulation, the FDIC created an index of inventories and sub-inventories of files on the server. (Opp'n 8, Doc. No. 215.)

4

as the bank who previously owned the records. "America West" as plaintiff is America West Bank Members, L.C., not the bank itself. The contention that the server should be returned to America West lacks merit.

America West also argues production of the entire server would decrease the burden on the FDIC. The FDIC represented it would cost $21,000 to put the contents of the server on a searchable platform. (Opp'n 3, Doc. No. 215.) America West suggests the FDIC could avoid this cost by turning over the entire server to America West. (Mot. 5, Doc. No. 198.) This effectively amounts to a request by America West to do its own relevance review of the documents in the FDIC's possession and avoid a privilege review altogether. This approach is impermissible, and it would be unduly burdensome to require the FDIC to bear the $21,000 cost to make the server searchable. Further, the court already denied production of the entire server, finding America West had failed to identify how production of the entirety of the bank's records was relevant and proportional. (*See* Order, Doc. No. 142.) Nothing presented in this motion warrants changing that ruling.

This leaves at issue the bank documents in the FDIC's database. (*Id.* at 2.) The FDIC database contains copies of select bank documents duplicated by the FDIC.[6] (*Id.* at 3.) The FDIC contends America West disregarded the court's prior order to be more specific in its document request. (Opp'n 3, Doc. No. 215.) However, it is clear from the briefing and exhibits that America West did try, in good faith, to be more specific. For instance, America West first suggested 104 search terms, thirteen of which resulted in 150,000 documents. (*Id.*) America

---

[6] America West contends the critical bank documents are located both on the server and in the FDIC database. (Mot. 2, Doc. No. 198.) But at the hearing, the FDIC explained it is possible that not all documents on the server are also on the FDIC database because the database was created separately from the server.

5

West narrowed this list to forty-six search terms, resulting in 37,000 documents.[7] (*Id.*) The parties did not agree upon a further narrowed list.

Without addressing any of the FDIC's arguments of burden or proportionality, America West claims these records are "crucial evidence."[8] (Mot. 2, Doc. No. 198.) According to America West, the information asymmetry in this case (where the FDIC has all the documents while America West has none), precludes America West's experts from presenting testimony and challenging the results of the ROEs. (*Id.*)

The FDIC argues a challenge to a bank seizure, by its nature, is a question of whether the defendants acted arbitrarily or capriciously—and this question does not warrant production of bank documents or extensive use of experts. (Opp'n 5, Doc. No. 215.) In support of this, the FDIC relies on *Franklin Savings Association v. Director, Office of Thrift Supervision*, 934 F.2d 1127 (10th Cir. 1991). *Franklin* differs somewhat from this case in the nature of the claims asserted. However, it is instructive in that it notes that courts may only go outside the administrative record for limited purposes, such as obtaining background information, when reviewing an agency action. *See id.* at 1137. The *Franklin* court specifically criticized the district court for improperly expanding its scope of review by allowing experts to opine on acceptable levels of certain assets and deposits. *Id.* at 1150–51. The FDIC contends that to the extent experts are necessary, America West's experts can review numerous, publicly available documents to determine the bank's financial stability. (Opp'n 4–5, Doc. No. 215.) In light of

---

[7] At the hearing, the FDIC clarified that "hits," as noted in its opposition, refers to documents rather than the number of times the word appears in the database.

[8] Because neither party addressed facts related to the importance of the issues at stake, the amount in controversy, or the parties' resources, these factors are not considered. *See* Fed. R. Civ. P. 26(b)(1).

the limited nature of the review, the FDIC argues the review of 37,000 documents would be unduly burdensome and disproportionate to the needs of the case. (*Id.* at 6.)

The FDIC has established that review of 37,000 documents is disproportionate to the needs of the case and would be unduly burdensome. The sole relief America West sought: either production of the entire server or 37,000 documents is denied. The parties are encouraged to meet and confer in an effort to narrow the production to a reasonable and proportionate number through continual narrowing of the search terms, use of the index (referenced in footnote five of this order), or the identification of categories of records.

II. **FDIC Documents**

The next set of documents at issue are documents of the FDIC itself, which America West requested in the remainder of the subpoena and in a *Touhy*[9] request. (Mot. 6, Doc. No. 198.) America West argues the production of these documents is faulty in two ways: (1) the FDIC produced documents with unwarranted redactions, and (2) the FDIC used too narrow search terms to look for relevant documents. (*Id.*) America West contends that where the FDIC is a nonparty, the court may consider both compliance with the subpoena and the *Touhy* requests rather than requiring a separate lawsuit under the Administrative Procedures Act ("APA"). (*Id.* at 10–13.) A separate lawsuit under the APA is necessary, according to the FDIC, because as agency records governed by *Touhy* regulations, this court lacks jurisdiction to review the FDIC's decision as to what to produce. (Opp'n 8, Doc. No. 215.)

Subject to certain authorized disclosures, the FDIC's regulations state "no person shall disclose or permit the disclosure of any exempt records, or information contained therein, to any

---

[9] *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

persons."[10] 12 C.F.R. § 309.6(a). They also prohibit "any person, entity or agency" from disclosing "in any manner the exempt records or information without written authorization from the Director of the Corporation's Division having primary authority over the records or information." *Id.*

In *Touhy*, the Supreme Court upheld a decision finding a subordinate federal employee may refuse, pursuant to agency direction, to obey a subpoena duces tecum absent authorization from her superior. *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468 (1951). Adhering to *Touhy*, in *Saunders v. Great Western Sugar Company*, 396 F.2d 794 (10th Cir. 1968), the Tenth Circuit set aside a district court's ruling. In *Saunders*, subordinate officials of the Small Business Administration appealed an order compelling a response to a subpoena duces tecum they refused to answer, pursuant to the agency's regulations. *Id.* at 794–95. The Tenth Circuit held that where the court was bound by *Touhy*, the defendants had to proceed against the proper official in the District of Columbia to obtain the requested information. *Id.* at 795.

Relying on *Saunders*, the FDIC argues that America West must seek to compel production in a separate APA action. (Opp'n 8, Doc. No. 215.) America West urges the court to reject this approach and to, instead, follow *Ceroni v. 4Front Engineered Solutions, Inc.*, 793 F. Supp. 2d 1268 (D. Colo. 2011). (Mot. 10–11, Doc. No. 198.) In *Ceroni*, the District of Colorado drew a distinction between litigants in state and federal court. The court held that a federal court may properly address a motion to enforce its own subpoena without requiring an independent, collateral APA action, where a litigant in state court would instead need to initiate an APA suit. *Ceroni*, 793 F. Supp. 1268, 1275. But this holding seems inconsistent with *Saunders*—as recognized by *Armstrong v. Arcanum Group, Inc.*, 250 F. Supp. 3d 802 (D. Colo. 2017), a later

---

[10] America West does not dispute the validity of this regulation.

case out of the District of Colorado. In *Armstrong*, the District of Colorado observed that "*Ceroni* takes a contrary position to the Tenth Circuit." *Id.* at 805. The *Armstrong* court rejected *Ceroni*'s approach, requiring the plaintiff to file an independent APA action to address an agency denial of her *Touhy* request. *Id.* at 806.

*Saunders* is binding on this court, and under *Saunders*, if America West wishes to dispute the FDIC's *Touhy* disclosure decisions, it must do so in an APA proceeding. *See* 396 F.2d at 795 (finding the district court did not have jurisdiction to enforce compliance with the subpoena); *see also U.S. Steel Corp. v. Mattingly*, 663 F.2d 68, 68 (10th Cir. 1980) (reversing district court's decision to enforce a subpoena). This court lacks jurisdiction to compel compliance with the remainder of the subpoena or the *Touhy* requests. For the same reasons, the court lacks jurisdiction to compel America West's request for a 30(b)(6) designee. If America West wishes to dispute the FDIC's decision under its *Touhy* regulations, it must initiate an independent, collateral APA action.

## CONCLUSION

The relief sought pursuant to Request 10 of the subpoena (production of a one terabyte server or, in the alternative, review of 37,000 documents) is unduly burdensome and disproportionate to the needs of the case. And the remainder of the motion to compel must be brought in an APA proceeding. Accordingly, America West's motion is DENIED.

DATED this 18th day of November, 2021.

BY THE COURT:

*Daphne A. Oberg*
Daphne A. Oberg
United States Magistrate Judge