UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| AMERICA WEST BANK MEMBERS, L.C., <br><br> Plaintiff, <br><br> v. <br><br> STATE of UTAH; UTAH DEPARTMENT OF FINANCIAL INSTITUTIONS; G. EDWARD LEARY, an individual; and JOHN DOES 1-20, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL DISCOVERY (DOC. NO. 174)** <br><br> Case No. 2:16-cv-00326-CW-DAO <br><br> Judge Clark Waddoups <br><br> Magistrate Judge Daphne A. Oberg |

America West Bank Members, L.C. ("America West") brought this action against Defendants State of Utah, Utah Department of Financial Institutions ("UDFI"), and G. Edward Leary, asserting violations of due process and substantive due process, unconstitutional takings, and claims under 42 U.S.C. sections 1983 and 1988.  (Second Am. Compl., Doc. No. 33.)  Now before the court is America West's Motion to Compel Discovery, ("Mot.," Doc. No. 174).  The court heard oral argument on the motion on August 26, 2021, (Doc. No. 194), after which the parties filed supplemental documents, (Doc. Nos. 197, 200), and the court conducted an in-camera review.  For the reasons stated below, America West's motion is granted in part and denied in part.

<u>BACKGROUND</u>

America West's Complaint arises out of the alleged improper seizure of America West Bank.  According to America West, as of 2007, the bank received good ratings from its regulatory reviews.  (Second Am. Compl. 3, Doc. No. 33.)  Then, in early 2008, the Federal

1

Deposit Insurance Corporation (the "FDIC") and the UDFI changed their temperament toward the bank and the relationship became hostile and aggressive. (*Id.* at 4.) Despite improved performance from 2007 to 2008, America West received low ratings on its 2008 review. (*Id.* at 5.) America West attributes the change in ratings to a new group of regulators who applied different and incorrect standards and methodologies. (*Id.* at 5–6.) Had the FDIC and UDFI used proper standards, America West contends the reports would have been markedly different. (*Id.* at 7.) America West believes the FDIC wanted to end America West's member banking concept, (*id.* at 4–5), and used manipulated scores as a basis to seize the bank, (*id.* at 12).

On May 1, 2009, Commissioner Leary, acting on behalf of the UDFI, petitioned the State Court of Utah for an order granting possession of the bank. (*Id.* at 9.) America West asserts Commissioner Leary could not have believed possession was warranted and knew or should have known it was improper—because the UDFI knew its reports were incorrect. (*Id.* at 11–12.) The court granted the petition and appointed the FDIC as the bank's receiver, while Cache Valley Bank took over the depositor accounts. (*Id.* at 16.)

In addition to the state petition and the current federal action, there is also another related proceeding— *Federal Deposit Insurance Corporation v. Durbano*, 1:09-cv-00056-CW-DAO (D. Utah) ("*Durbano*"). The bank's records were at issue in the *Durbano* action, including a server created by Mr. Durbano containing copies of bank records. In *Durbano*, the court issued a temporary restraining order requiring the bank's documents, including the server, be turned over to the FDIC. (*See Durbano*, Doc. Nos. 9–11.) The parties filed a stipulation and motion to strike the preliminary injunction hearing, which included details as to how and when bank records were turned over to the FDIC. (*Durbano*, Doc. No. 17.)

At issue in this motion are the UFDI's responses to America West's document requests. (Mot., Doc. No. 174.)  America West argues, first, the UFDI and FDIC provided insufficient evidence in their privilege logs for America West to ascertain whether the listed documents are privileged.  Second, America West contends the UDFI is improperly withholding documents under the claim of privilege asserted by either the UDFI or FDIC.  America West makes general claims that governmental litigants cannot claim privilege, no privilege exists under the crime-fraud exclusion and, even if the government can claim privilege, the UDFI and FDIC have not met their burden to establish specific documents are privileged.  (*Id.* at 7, 10, 13.)  The UDFI and FDIC both oppose the motion, arguing America West's general arguments regarding privilege are incorrect and they have properly designated their respective documents.[1]  (Opp'n to Pl.'s Mot. to Compel ("FDIC Opp'n"), Doc. No. 182; Opp'n to Pl.'s Mot to Compel Disc. ("UDFI Opp'n"), Doc. No. 183.)

<u>LEGAL STANDARDS</u>

A party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1). When asserting a privilege, the party withholding the information must "expressly make the claim," and "describe the nature of the documents, communications, or tangible things" withheld in a way that "enable[s] other parties to assess the claim" without revealing privileged or protected information.  Fed. R. Civ. P. 26(b)(5)(A).  Notwithstanding the above general

---

[1] The FDIC and UFDI have an agreement prohibiting either party from producing the other party's documents in litigation without first providing the other an opportunity to assert any privilege or objections.  (FDIC Opp'n 2 n.1, Doc. No. 182.)  Per this agreement, the UFDI withheld several documents on the FDIC's claim of privilege.

3

requirements, district courts have "broad discretion over the control of discovery." *Sec. & Exch. Comm'n v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010).

The main protections asserted by the UDFI and FDIC are attorney-client privilege and work-product immunity. As an initial matter, neither party nor the FDIC briefed whether federal law or Utah law applies to the claim of attorney-client privilege.[2] In federal civil cases, "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. But in cases of federal-question jurisdiction, federal privilege law applies to "pendent [s]tate law claims." Fed. R. Evid. 501 advisory committee's note; *see also Entrata, Inc. v. Yardi Sys.*, No. 2:15-cv-00102, 2018 U.S. Dist. LEXIS 149239, at *6 (D. Utah Aug. 30, 2018) (unpublished). When privilege is claimed as to evidence relating to both federal and state law claims, "most circuit courts have either held that federal privilege law governs or approved of such an approach without explicitly adopting it." *Entrata, Inc.*, 2018 U.S. Dist. LEXIS 149239, at *6 (internal quotation marks omitted).

The Tenth Circuit takes a different approach, holding where there are federal and state law claims, "[a]s to state causes of action, a federal court should look to state law in deciding privilege questions." *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1551 (10th Cir. 1995). That said, "it appears that the Tenth Circuit has not confronted the issue of which law applies where evidence allegedly subject to a privilege is relevant to both the federal and state-law claims in the case." *Entrata, Inc.*, 2018 U.S. Dist. LEXIS 149239, at *6–7 (internal quotation marks omitted). Where this case is one arising out of federal question jurisdiction, (*see* Notice of Removal, Doc.

---

[2] In federal court, the federal work product doctrines applies regardless of whether the evidence relates to a federal or state law claim. *Frontier Refining, Inc. v. Gorman–Rupp Co.,* 136 F.3d 695, 702 n.10 (10th Cir. 1998).

No. 2), no entity argued which law should apply, and no party indicated which claim(s) the documents relate to, the court looks to federal law.

I.     Attorney-Client Privilege

Attorney-client privilege protects communications between client and counsel which are confidential and "made in order to obtain legal assistance." *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010). A party invoking the attorney-client privilege must show (1) a communication (2) between privileged persons, (3) made in confidence, (4) for the purpose of seeking, obtaining, or providing legal assistance. *See Matter of Grand Jury Subpoena Duces Tecum*, 697 F.2d 277, 278 (10th Cir. 1983). Attorney-client privilege is narrowly construed, *Burke v. Regalado*, 935 F.3d 960, 1023 (10th Cir. 2019), and the party asserting the privilege has the burden to "prove its applicability." *In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999); *see also F.D.I.C. v. United Pac. Ins. Co.*, 152 F.3d 1266, 1276 n.6 (10th Cir. 1998).

"[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege." *In re Grand Jury Proceedings*, 616 F.3d at 1182. The attorney must be acting in her capacity as "a legal advisor" for the communication to be protected. *Matter of Grand Jury Subpoena Duces Tecum*, 697 F.2d at 278. And the communication "must relate to legal advice or strategy sought by the client." *In re Grand Jury Proceedings*, 616 F.3d at 1182 (internal quotation marks omitted). If communications relate to matters other than legal advice or strategy, such as general business or technical matters, they will not be privileged. *Entrata, Inc.*, 2018 U.S. Dist. LEXIS 149239, at *9–10. However, just as the presence of an attorney does not render a communication privileged, neither does the absence of an attorney. For example, communications among "non-attorney corporate employees for the purpose of obtaining legal advice will be protected."

*Adams v. Gateway, Inc.*, No. 2:02-cv-106, 2003 U.S. Dist. LEXIS 28559, at *35-36 (D. Utah Dec. 30, 2003) (unpublished) (internal quotation marks omitted).

    II.    <u>Work-Product Immunity</u>

    The work-product doctrine "is broader than and distinct from the attorney-client privilege." *Hatfield v. Cottages on 78th Cmty. Ass'n*, No. 2:19-cv-964, 2020 U.S. Dist. LEXIS 72117, at *4 (D. Utah Apr. 23, 2020) (unpublished).  Under the work-product doctrine, in general, "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."  Fed. R. Civ. P. 26(b)(3)(A).  However, a party may obtain work product if the documents "are otherwise discoverable" and the requesting party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  *Id.*  Like attorney-client privilege, the work-product doctrine "does not protect facts," whether they are facts "concerning the creation of work product or facts contained within work product."  *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995).  Moreover, it is to be "narrowly construed," *United States ex rel. Baker v. Cmty. Health Sys., Inc*, No. 05-279, 2012 U.S. Dist. LEXIS 191017, at *17 (D.N.M. July 25, 2012) (unpublished) (internal quotation marks omitted).

    To establish work-product immunity, the party claiming the protection bears the burden to establish "(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party." *Strand v. USANA Health Scis., Inc.*, No. 2:17-cv-00925, 2021 U.S. Dist. LEXIS 135426, at *5 (D. Utah July 20, 2021) (unpublished) (internal quotation marks omitted).  The "anticipation of litigation" factor has two components.  *Id.*  First, "the

causation requirement," is that the document must have been prepared in anticipation of litigation rather than in the ordinary course of business. *Id.* In other words, the party asserting work-product immunity must show the document was prepared primarily "to assist in anticipated or ongoing litigation and establish the underlying nexus between the preparation of the document and the specific litigation." *Id.* at *5–6.

The second component relates to the reasonableness of the party's anticipation of litigation. *Id.* at *5. The party asserting work-product immunity "must show more than a remote prospect, an inchoate possibility, or a likely chance of litigation." *Id.* at *12 n.19. Rather, the "threat of litigation must be real and imminent." *Id.* at *5. "[C]onclusory statements that documents were prepared in anticipation of litigation" are insufficient to meet this burden, *In re Motor Fuel Temperature Sales Practices Litig.*, No. MDL No. 1840, 2010 U.S. Dist. LEXIS 146809, at *77 (D. Kan. July 7, 2010) (unpublished) (internal quotation marks omitted), as are general "allegation[s] that the work product doctrine applies," *King v. Gilbreath*, No. CIV-13-0862, 2014 WL 12786916, at *4 (D.N.M. Oct. 29, 2014) (unpublished) (internal quotation marks omitted).

III.   Common-Interest Privilege

The UDFI asserts common-interest privilege applies to several of its privilege log entries. The common-interest privilege is not an independent privilege or immunity, but "operates as a shield to preclude waiver" when confidential information is disclosed "to a third party who shares a community of interest with the represented party." *Trans-Western Petroleum, Inc. v. Wolverine Gas & Oil Corp.*, No. 2:06-cv-801, 2011 U.S. Dist. LEXIS 144744, at *10 (D. Utah Dec. 15, 2011) (unpublished) (quoting *Frontier Ref. Inc. v. Gorman–Rupp Co.*, 136 F.3d 695, 705 (10th Cir.1998)). Common-interest privilege is an "exception to waiver because disclosure

advances the representation of the party and the attorney's preparation of the case.  *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1195 (10th Cir. 2006).  The common-interest privilege applies to both attorney-client communications and work-product protections.  *Id.*  To establish a "community of interest," the entities must "have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice." *U.S. ex rel. (Redacted) v. (Redacted)*, 209 F.R.D. 475, 479 (D. Utah 2001) (internal quotation marks omitted).

IV.   Bank Examination Privilege

The FDIC also raises the bank examination privilege.  (FDIC Suppl. 4, Doc. No. 200.) The bank examination privilege, or bank examiner's privilege, "belongs to the agency" and "protects agency opinions and recommendations, as well as banks' responses to those opinions and recommendations, from disclosure."  *United States v. Heine*, No. 3:15-cr-00238-SI-2, 2016 U.S. Dist. LEXIS 44397, at *26 (D. Or. Mar. 31, 2016) (unpublished).  This privilege "does not apply to factual information," which, if relevant, must be produced, but rather "protects only agency opinions and recommendations from disclosure."  *In re Wilmington Tr. Sec. Litig.*, 2016 U.S. Dist. LEXIS 189794, at *14 (D. Del. Aug. 16, 2016) (unpublished) (internal quotation marks omitted).  It is the agency's burden "to present more than a bare conclusion or statement that the documents sought are privileged."  *Id.*  For documents containing a combination of both factual and evaluative material, the privileged evaluative material should be redacted.  *Id.* at *15.

ANALYSIS

America West advances several general arguments against the claims of privilege, which will be addressed before discussing challenges to specific documents.

## I.        General Arguments Regarding Privilege

As a general matter, America West argues no privilege applies to government entities and, if it does, the public can waive it; the crime-fraud exception undermines any claim of privilege in this case; and because the documents it seeks relate to previous litigation, they are not privileged in this case.  Each of these general arguments fails.

America West's first general arguments are that: 1) no privilege applies between governmental entities and their public attorneys, and 2) alternatively, if a government entity can claim attorney-client privilege, the public (as the de facto client) is able to waive the privilege. America West asserts that where "the ultimate client of a government attorney is the state's citizens or the American people in general," the public at large (or, here, the bank) should be able to waive any privilege.  (Mot. 6–7, Doc. No. 174.)  Emphasizing it seeks only to discover documents pertinent to the underlying bank seizure, America West contends its position is a requirement of an open government, as established by the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Government Records Access and Management Act ("GRAMA"), Utah Code Ann.§ 63G-2-201 et. seq.  (Mot. 9, Doc. No. 174.)

These arguments fail for several reasons.  First, America West offers no legal authority supporting its claim that government lawyers and the entities they represent lack privilege protections.  And the Supreme Court has found these protections apply: "unless applicable law provides otherwise, the Government may invoke the attorney-client privilege in civil litigation to protect confidential communications between Government officials and Government attorneys." *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 170 (2011).

America West also neglects to provide legal authority supporting its claim that the public may waive any privilege which exists.  Case law does not support America West's position.  *See*

*Tax Analysts v. Internal Revenue Serv.*, 117 F.3d 607, 618 (D.C. Cir. 1997) ("In the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer."); *see also Jicarilla Apache Nation*, 564 U.S. at 170.  And even if America West's position were otherwise well-founded, the plaintiff here is not the public nor even the seized bank.  It is a different private entity: America West Bank Members, L.C.  None of the cases cited by America West change this analysis.  This is not a grand jury proceeding nor a federal criminal investigation, (*see* Mot. 8, Doc. No. 174 (citing *In re Witness Before Special Grand Jury 2000-2*, 288 F.3d 289, 294 (7th Cir. 2002))), nor is it a FOIA or GRAMA request, (*see id.* at 9 (citing *Schroeder v. Utah Attorney General's Office*, 2015 UT 77, ¶¶ 3,19, 358 P.3d 1075)).

Next, America West has not met its burden to establish the crime-fraud exception applies to negate a claim of privilege.  Privilege "does not apply where the client consults an attorney to further a crime or fraud."  *Sprague v. Thorn Americas, Inc*., 129 F.3d 1355, 1371–72 (10th Cir. 1997).  To meet its burden, a party asserting the crime-fraud exception must provide record evidence showing the attorney's advice "was sought to perpetuate a crime [or] a fraud."  *Id.* at 1372.  "A broad overall claim as to all the communications as being within the crime/fraud exception cannot be accepted."  *Lifewise Master Funding v. Telebank*, 206 F.R.D. 298, 305 (D. Utah 2002).  America West argues its "allegations relating to the purposeful fraudulent and intentional or negligent misrepresentation of the Bank's financial condition in order to seize its assets and destroy its business model" satisfy the crime-fraud exception.  (Mot. 11, Doc. No. 174).  But this is a broad overall claim—insufficient to establish the crime-fraud exception.  America West has failed to provide record evidence showing an attorney's advice was sought for purposes of perpetuating a fraud; instead, America West makes only claims of fraud in its Second Amended Complaint, (Doc. No. 33).

Lastly, America West argues no privilege exists because the documents sought concern the underlying 2009 investigation and litigation; they are not privileged communications and documents relating to the current lawsuit.  But a privilege does not terminate automatically upon closure of a case.  *See United States v. Gonzales*, 150 F.3d 1246, 1266 (10th Cir. 1998) ("Certainly . . . the [attorney client] privilege does not terminate when the [clients'] trials are over."); *Frontier Ref., Inc.*, 136 F.3d at 704 ("[T]he work product doctrine does indeed extend to subsequent litigation.").  There is no question the underlying 2009 litigation is closely related to this case.  *Cf. Frontier Ref., Inc.*, 136 F.3d at 703–04.  The distinction between the two actions may be relevant to whether there are exceptions to work-product immunity on a document-by-document basis, but it does not negate privilege entirely.  *See* Fed. R. Civ. P. 26(b)(3)(A).

Where America West's general arguments regarding attorney-client privilege and work-product immunity fail, arguments as to specific documents are addressed next.

## II.     Arguments as to Particular Documents

America West argues the UFDI and FDIC's privilege logs fail to establish privilege is warranted with regard to the documents identified in footnote seven of its motion.  (*See* Mot. 14 n.7, Doc. No. 174).  America West breaks these documents into three categories: (1) communications with a third party, (2) communications without an attorney, and (3) communications where the attorney is only one of several recipients.  (*Id.*)  Upon America West's request, and the defendants' and the FDIC's consent, the court agreed to conduct an in camera review—and provided the UDFI and the FDIC an opportunity to file supplemental

documents explaining their claims of privilege specific to the documents listed in footnote seven.[3]

Below, documents are referenced by Bates number, and the five emails without Bates numbers are referenced by date.  While America West's primary concern with these documents relate to the inclusion of an attorney and the presence of other individuals on the communication, as discussed above, attorney-client privilege does not turn on the presence of absence of an attorney.  And work-product immunity extends to documents created by the client and the client's representative.  Fed. R. Civ. P. 26(b)(3)(A); *see also Hatfield*, 2020 U.S. Dist. LEXIS 72117, at *4.  Thus, related documents are discussed together, regardless of whether an attorney is included in the communications.  Because the UFDI and the FDIC bear the burden of establishing privilege for all documents withheld, each document is addressed in turn.

A. *Temporary Restraining Order Proceedings*

The documents at Bates 005860, 005863, 005868, 005869, 005872, 005879, 005882, 005893, 005896, 005897, 005898, 005986, and 006573 are parts of an email thread regarding witness participation in the Temporary Restraining Order ("TRO") proceedings in the *Durbano* action.  The FDIC asserts work-product applies to Bates 005860, 005868, 005893, 005898, 005986, and 006573, and the UDFI claims it applies to the remaining documents in this group.  The also UDFI asserts work-product immunity over Bates 005986 and 006573, work-product immunity and attorney-client privilege over Bates 005868, 005893, 005898, and attorney-client privilege over Bates 005860.

---

[3] The FDIC filed its own opposition and supplement because twelve of the documents listed in footnote seven were withheld based on a claim of privilege from the FDIC.  (FDIC Opp'n 2, Doc. No. 182.)  Despite America West's argument to the contrary, third parties are entitled to object to production based on the third-party's privilege.  *See In re Bankers Tr. Co.*, 61 F.3d 465, 472 (6th Cir. 1995).

These documents consist of communications between the FDIC and the UDFI regarding witness testimony at the TRO proceedings and are properly withheld as work product. Each of these documents was created by the party or a representative of the party. *See Strand*, 2021 U.S. Dist. LEXIS 135426, at *5. The individuals listed in the emails are FDIC personnel and attorneys and UDFI personnel and attorneys. Moreover, it is clear the documents were created "in anticipation of litigation or for trial." The documents relate to the TRO proceeding in the *Durbano* action, an active case at that time—and include some legal analysis and strategy. The presence of the UDFI and the FDIC together do not waive the privilege, as they had a common interest in the underlying TRO proceedings. These documents (Bates 005860, 005863, 005868, 005869, 005872, 005879, 005882, 005893, 005896, 005897, 005898, 005986, and 006573) were properly withheld.

The final documents in this category, Bates 005973 and 005974, appear to be the same document. This document relates to the *Durbano* action. The UFDI's supplemental privilege log states it relates to "[p]ossible possession." (Defs.' Suppl. 8, Doc. No. 197.) Regardless, the documents at Bates 005973 and 005974 sufficiently relate to protected communications and legal strategy such that they are privileged. Thus, all documents in this category were properly withheld.

### B. *Cease-and-Desist Order*

This next category of documents pertains to the cease-and-desist order. Given the extensive number, they are addressed in the categories listed by America West.

i.     Communications with a Third Party: Emails with Ms. Babalis[4]

The UDFI withheld two emails (dated October 24, 2008 and October 27, 2008) from Perri Babalis, UDFI attorney, to JoAnna Gekas, FDIC attorney, on the grounds of work-product immunity and common-interest privilege.  (UDFI Priv. Log, Doc. No. 174-1; Defs. Suppl. 4, Doc. No. 197.)  These emails pertain to draft cease-and-desist letters, but do not include the drafts themselves.  To fall under the work-product doctrine, the party asserting protection must show the documents were prepared in anticipation of litigation or for trial.  *Strand*, 2021 U.S. Dist. LEXIS 135426, at *5.  To do this, the party must show a "real and imminent" threat of litigation, which is "more than a remote prospect, an inchoate possibility, or a likely chance."  *Id.*  The UFDI has failed to do so.[5]  Indeed, the UFDI never claimed the documents were created in anticipation of litigation or that cease-and-desist proceedings constitute litigation.  And legal authority supports the idea that cease-and-desist orders do not constitute "litigation."[6]  *See Hatfield*, 2020 U.S. Dist. LEXIS 72117, at *5–6.  Because the UFDI has not established work-product immunity applies, the common-interest doctrine cannot independently protect the documents.  Both documents must be produced.

---

[4] Because these documents lack Bates numbers, they referenced by date.

[5] Although America West based its objections on the presence or absence of an attorney rather than whether the cease-and-desist orders were in anticipation of litigation, the party claiming privilege bears the burden to establish the privilege applies.  It was for this reason that the court gave all parties (and the FDIC) an opportunity to submit supplemental briefs.

[6] The FDIC states the cease-and-desist proceeding was "in lieu" of litigation as to the FDIC. (FDIC Opp'n 3, Doc. No. 182.)  But this conclusory statement is devoid of legal authority showing an action take in lieu of litigation satisfies the "anticipation of litigation" requirement. And general allegations are insufficient.  *In re Motor Fuel Temperature Sales Practices Litig.*, 2010 U.S. Dist. LEXIS 146809, at *77.

ii.    Documents with No Attorney Included in the Communication

The documents at Bates 006228, 006244, 006249, 006314, 006330 and 006333 also pertain to the cease-and-desist order.  The UFDI seeks to withhold Bates 006228, 006244, and 006249 on work-product and attorney-client privilege grounds.

Bates 006228 and 006249 appear to be the same document and Bates 006244 is a subsequent email in the same email chain.  These emails are entitled to attorney-client privilege protection, where they contain confidential communications made for the purpose of seeking legal advice, and contain information forwarded from lawyers on the case.

The FDIC asserts bank examiner's privilege and work-product immunity as to Bates 006314.  The UDFI also lists this document in its original privilege log, claiming attorney-client privilege.  Although this email is not entitled to work-product protection (as it was not established that the cease-and-desist process was in anticipation of litigation), the email is protected by attorney-client privilege.  As a communication between UDFI counsel and the UDFI regarding legal strategy, the document is properly withheld.

The FDIC also asserts bank examiner's privilege and work-product immunity as to Bates 006330.  (FDIC Suppl. 3, Doc. No. 200.)  The UDFI asserts work-product immunity as to this same document.  (Doc. 174-1.)  Where neither the FDIC nor the UDFI established the cease-and-desist process was in anticipation of litigation, the claim of work-product immunity fails.  However, the document falls under bank examiner's privilege, as it contains potential opinions and recommendations of the FDIC and information related to the bank's responses.  On this basis, the document is privileged.

Lastly, the UFDI does not list Bates 006333 in its supplemental privilege log, but did include the document in its original privilege log as withheld under the work-product doctrine.

In its supplement, the UFDI notes this document contains work product and confidential attorney-client communications—and the FDIC has identified it as privileged. (Defs.' Suppl. 7, Doc. No 197.) In its original privilege log, (Ex. 2, Doc. No. 174-2), the FDIC claimed the document is protected under the work-product doctrine and bank examiner's privilege. Because it was listed as such, and this document contains opinions and recommendations of the FDIC, it is properly withheld under bank examiner's privilege.

### iii.   Documents with Attorney as One of Several Recipients

The documents at Bates 005981, 005982, 006250, 006267, 006268, 006269, 006317, 006615, and 006773 all pertain to the cease-and-desist proceeding. The FDIC seeks to withhold Bates 005981 and 005982 (which appear to be the same document) on the basis of bank examiner's privilege and work-product immunity. In its original privilege log, the UFDI claims these documents are protected by attorney-client privilege. And in its supplemental privilege log, the UFDI claims both attorney-client privilege and work-product immunity protects Bates 005981, and work-product immunity protects Bates 005982 (although the privilege log appears to contain errors in the date and description of the document). These documents are properly withheld by the UFDI under attorney-client privilege. They are confidential communications between UDFI counsel and UDFI personnel regarding legal advice and strategy. Therefore, there is no need to discuss the remaining privileges asserted.

The UFDI seeks to withhold Bates 006250 under attorney-client privilege and work-product immunity. Although the UFDI has not established it was sent in anticipation of litigation sufficient for work-product immunity, the document reflects a communication between counsel and client related to legal advice. As such, it is protected by attorney-client privilege.

The documents at Bates 006267, 006268, and 006269 are all various parts of an email string related to the draft cease-and-desist order.  The UFDI claims attorney-client privilege and work-product immunity as to these three documents.  Bates 006267 and 006268 are entitled to attorney-client privilege, as they are confidential communications between UDFI counsel and UDFI personnel regarding legal advice and strategy.  Thus, they are properly withheld.  Bates 006269 is likewise entitled to attorney-client privilege protection.  In this document, a UDFI employee is reiterating legal advice received from his counsel, with his comments and thoughts. This document is properly withheld.

The FDIC and the UFDI also seek to withhold Bates 006317.  This document reflects the UDFI seeking legal advice from its counsel regarding the cease-and-desist proceeding.  As such, it is properly withheld.  Bates 006773 is also properly withheld on attorney-client privilege grounds.  In this email, the UFDI is communicating with Ms. Babalis for purposes of legal advice.  Bates 006615 is likewise properly withheld by the UDFI on attorney-client privilege grounds.

### C.  Written Agreements

The documents at Bates 006261, 006412, and 006577 pertain to "written agreements" between the UDFI and America West (the bank's holding company and plaintiff in this action). The UDFI claims work-product immunity as to Bates 006261, attorney-client privilege and work-product immunity as to Bates 006412, and attorney-client privilege as to Bates 006577.

Bates 006412 and 006577 are protected by attorney-client privilege.  They are communications between the UDFI and its counsel for purposes of legal advice.  Thus, they are properly withheld.  However, Bates 006261 is not entitled to work-product immunity as the

UDFI did not establish litigation was imminent (and no other claim of privilege was asserted).
Thus, Bates 006261 must be produced.

### D. Federal Reserve Board

The document at Bates 006583 is an email chain between the UDFI and the Federal
Reserve Board.  The UDFI originally claimed this was protected under the work-product
doctrine, but later withheld it on the grounds that the Federal Reserve Board did not consent to
disclosure.  (Defs.' Suppl. 5, Doc. No. 197.)  The UDFI's original claim of work-product
immunity fails because it did not establish an imminent threat of litigation.  If the Federal
Reserve Board wishes to claim a privilege, it may file a brief explaining what privilege applies
and why.  To facilitate this, the UDFI must send a copy of this order to the Federal Reserve
Board within three business days of this order.  If no brief is filed by the Federal Reserve Board
within twenty days of the date of this order, Bates 006583 must be produced.

### E. Emails Forwarding Other Emails and/or Documents

The documents at Bates 006172, 006184, 006220, 006292, 006541, 006559, 006576,
006585, 006586, 006609, and 006614 are all emails which involve the forwarding of other
emails and/or documents.  The UDFI withheld Bates 006172, 006184, 006541, 006559, 006220,
and 006292 on the basis of attorney-client privilege and work-product privilege—and withheld
Bates 006576, 006585, 006586, 006609, and 006614 on the basis of attorney-client privilege
only.

Forwarding otherwise non-privileged documents to a lawyer does not automatically make
them privileged.  *See Warren Hill, LLC v. Neptune Investors, LLC*, Civ. A. No. 20-452, 2020
U.S. Dist. LEXIS 161106, at *3 (E.D. Pa. Sept. 3, 2020) (unpublished).  However, the fact that a
non-privileged document is forwarded is not enough to defeat a claim of privilege.  *General*

*Electric Co. v. United States*, No. 3:14-cv-00190, 2015 U.S. Dist. LEXIS 122562, at *5 (D. Conn. Sept. 15, 2015) (unpublished).  For example, the identity of an unprotected document a client sends her lawyer could "reveal that it was communicated in confidence to an attorney in connection with the seeking or receipt of legal advice." *Id.*; *see also Hilton-Rorar v. State & Fed. Communs., Inc.,* No. 09-cv-1004, 2010 U.S. Dist. LEXIS 36121, *19 (N.D. Ohio Apr. 13, 2010) (unpublished) ("Confidential e-mails from a client to his attorney attaching a pre-existing unprivileged e-mail may, nevertheless, be protected."); *Barton v. Zimmer Inc.*, No. 06-cv-208, 2008 U.S. Dist. LEXIS 1296, *17 (N.D. Ind. Jan. 7, 2008) (unpublished) ("[E]ven though one e-mail is not privileged, a second e-mail forwarding the prior e-mail to counsel might be privileged in its entirety.").  *But see Doe v. Intermountain Health Care*, Inc., No. 2:18-cv-807, 2021 U.S. Dist. LEXIS 9078, *7–10 (D. Utah, Jan. 16, 2021) (unpublished) (holding *Fisher v. United States*, 425 U.S. 391 (1972), precludes finding that non-privileged emails and attachments sent with a privileged communication seeking legal advice may also be privileged).

Bates 006172 and 006184 (which are the same document) are emails with attachments forwarded by the commissioner of the UDFI to counsel for the UDFI.  Considering the parties to the email and the contents of the forwarded email and its attachments, these documents can fairly be considered to be confidential attorney-client communications.  Similarly, Bates 006576, 006585, 006586 consist of email chains forwarded to counsel at the UDFI.  These documents reflect communications forwarded for purposes of seeking confidential legal advice.  Accordingly, Bates 006172, 006184, 006576, 006585, and 006586 are protected by attorney-client privilege.

Bates 006220, 006292, 006609, and 006614 reflect email chains forwarded (some with comments) by the UFDI to counsel and others at the UDFI.  Because the emails appear to have

been "communicated in confidence to an attorney in connection with the seeking or receipt of legal advice," *General Electric Co.*, 2015 U.S. Dist. LEXIS 122562, at *5–6, these documents were properly withheld.

Bates 006541 and 006559 (which appear to be the same document) consist of public information forwarded to counsel.  For the reasons noted in the *General Electric Company* case, the claim of privilege over this email is proper: even the forwarding of otherwise public information can reflect a client's concern and reveal the client sought legal advice in connection with it sufficient to merit attorney-client privilege protections.  *Id.*  Bates 006541 and 006559 are properly withheld.

*F.   Documents 006245 and 006256*

The UFDI represents that Bates 006256 has already been produced as UDFI 8367, rendering the motion moot as to this document.  (Defs.' Suppl. 7, Doc. No. 197.)  Bates 006245 is the next email in the same chain as Bates 006256.  The UFDI withheld Bates 006245 on the basis of attorney-client privilege and the work-product doctrine.  But the only thing the document adds to Bates 006256 is a statement of Mr. Berrett's availability.  Nothing material differentiates Bates 006245 from Bates 006256, such that Bates 006245 should be protected after Bates 006256 was produced.[7]  Bates 006245 must be produced.

*G.  FDIC Contact*

The documents at Bates 005932, 005933, 005938, 005978, 006005, and 006007 relate to contacts with the FDIC.  (Bates 005932 and 005938 appear to be the same document, as are

---

[7] The UFDI's claim that the Federal Reserve Board does not consent to production of this email, (Defs.' Suppl. 7, Doc. No. 197), is not persuasive where it is materially the same as Bates 006256, which has already been produced.

Bates 005933 and 005978. Bates 006005 and 006007 appear to also be the same document, despite the differences in the privilege log.[8]) Bates 005932, 05933, 005938, and 005978 consist of emails forwarded for purposes of legal advice and strategy—and some responses offering it. They are protected by attorney-client privilege. Thus, they are properly withheld.

Bates 006005 and 006007 are similarly entitled to attorney-client privilege, as it addresses confidential communications between the FDIC and UFDI's counsel. These documents are properly withheld.

### H.  Mistaken Documents

The UFDI's supplement notes that Bates 006423, 006555, 006560, 006669 were inadvertently included in the privilege log. (Defs.' Suppl. 11, Doc. No. 197.) According to the UFDI, these documents concern unrelated financial institutions and are not relevant to the current proceeding. Because they were not provided to the court, no ruling is made as to these documents.[9]

### I.  Remaining Documents

Where the remaining documents do not easily fit into any particular category, they are addressed in the three categories identified by America West.

#### i.  Communications with Third Parties

The remaining documents in this category are three emails—two dated April 22, 2009 and one dated April 29, 2009. The two April 22 emails appear to be the same. These emails are

---

[8] The original privilege log appears to be correct. (*See* Ex. 1, Doc. No. 174-1.)

[9] Bates 006423 was originally claimed as privileged by the FDIC. (*See* FDIC Opp'n 2, Doc. No. 182; FDIC Suppl. 5, Doc. No. 200.) The FDIC is ordered to meet and confer with America West to clarify whether Bates 006423 is related to America West and being withheld under a claim of privilege.

related to active litigation and are protected under the work-product doctrine.  There is no suggestion the UDIF waived any immunity by sending it to the FDIC where it was not sent to an adversary.  *See, e.g.*, *In re Urethane Antitrust Litig.*, No. 04-MD-1616, 2009 U.S. Dist. LEXIS 60496, at *41 (D. Kan. July 15, 2009) (unpublished) ("Work-product protection is waived when privileged documents are voluntarily disclosed to an adversary.")  As such, they are properly withheld.  The final email, dated April 29, 2009, contains the UFDI attorney's mental impressions.  This email is entitled to protection as opinion work product, as it was created pursuant to litigation.  It is properly withheld.

### ii.      Documents with No Attorney Included in the Communication

Neither of the documents at Bates 0006759 or 006760 are logged in the UDFI's supplemental privilege log.  However, the UFDI notes in its supplement that these documents are an email and an attached legal memo to send to counsel for purposes of legal advice.  The documents support this contention.  Where the documents are confidential communications between client UDFI and its counsel for the purpose of seeking legal advice, they are properly withheld.

### iii.      Documents with Attorney as One of Several Recipients

The documents at Bates 006144, 006146, 006150, 006154, 006166, 006340, 006543, 006584, 006620, 006643, 006731, and 006733 are the remaining documents listed in the America West's third category—documents where the attorney is only one of several recipients.

The UDFI withheld Bates 006144, 006584, 006620, and 006643 on the grounds of attorney-client privilege.  As confidential communications between the UDFI and its counsel discussing legal strategy and seeking advice, these documents are entitled to attorney-client privilege protection.   Bates 006144, 006584, 006620, and 006643 are properly withheld.

Bates 006731 and 006733 were withheld on the basis of attorney-client privilege and work-product immunity. Both documents are emails from UDFI to its counsel with attached documents. Given the parties to the communication and the nature of the emails, the UDFI has met its burden to establish these were sent for purposes of obtaining legal advice and are properly withheld. The UDFI also claims Bates 006340 is protected by attorney-client privilege and the work-product doctrine. This is an email to Ms. Babalis explicitly seeking advice of counsel. Bates 006340 is protected by attorney-client privilege. Thus, Bates 006731, 006733, and 006340 are properly withheld.

Bates 006146 and 006150 are the same email regarding a letter drafted by UFDI counsel. The UDFI claims protection under attorney-client privilege and the work-product doctrine. These emails are properly withheld as privileged attorney-client communications for purposes of discussing legal advice and strategy. Similarly, Bates 006154 and 006166 appear to be the same email and are withheld on the basis of attorney-client communication and work-product immunity. The document at Bates 006543 is also withheld on the basis of attorney-client privilege and the work-product doctrine. Each of these emails is protected under attorney-client privilege as they touch on legal strategy and contain protected communications. Bates 006146, 006150, 006154, 006166, and 006543 are properly withheld.

CONCLUSION

The motion is GRANTED in part and DENIED in part. The court ORDERS:

- The following documents must be produced within fourteen days: October 24, 2008 email, October 27, 2008 email, Bates 006261, and Bates 006245.

- The UDFI must send a copy of this order to the Federal Reserve Board within three business days. If the federal reserve board wants to claim a privilege over Bates

23

006583 it must file a brief stating what privilege it believes the document is entitled to and the reasons why.  If no brief is filed by the Federal Reserve Board within twenty days, Bates 006583 must be produced without further notice.

- The motion is denied as moot as to Bates 006256.

- No ruling is made as to Bates 006423, 006555, 006560, and 006669 because they were not produced to the court.  The UFDI and the FDIC must meet and confer to confirm Bates 006423 is irrelevant.

- All other documents are properly withheld.

DATED this 11th day of January, 2022.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge