IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AMERICA WEST BANK MEMBERS,<br><br>Plaintiff,<br><br>v.<br><br>THE STATE OF UTAH, et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:16-cv-326<br><br>Judge Clark Waddoups |

Before the court is Defendants' motion for summary judgment, (ECF No. 280), which argues, among other things, that the each of the claims asserted by Plaintiff America West Bank Members (hereinafter "AWBM" or the "Holding Company") in this action were assumed by the Federal Deposit Insurance Corporation ("FDIC"), pursuant to 18 U.S.C. § 1821(d)(2)(A), upon the FDIC's appointment as receiver for America West Bank (hereinafter the "Bank"). For the reasons set forth herein, the court agrees and grants Defendants' motion for summary judgment.

**Background[1]**

AWBM is a Utah limited liability company that was the sole owner of America West Bank. In or around 2007, the Bank allegedly came up with a novel business plan, referred to by AWBM

---

[1] Because determining whether AWBM's claims were assumed by the FDIC pursuant Section 1821(d)(2)(A) depends on the nature of the claims asserted by AWBM in its operative complaint, the background facts described herein are derived from the allegations of AWBM's second amended complaint. (ECF No. 33.) The court recognizes that several of the allegations summarized herein are disputed by Defendants. Those factual disputes, however, are not material to the outcome of this motion. Indeed, the only facts that are material to the outcome of this motion are (1) the undisputed fact that the FDIC was appointed as receiver of the Bank on May 1, 2009 (Notice of Appointment, ECF No. 280-41) and (2) the undisputed fact that the claims described herein were alleged by AWBM in its second amended complaint (2d Am. Compl., ECF No. 33).

1

as the "member banking concept," whereby the Bank would be organized in a manner that combined the best aspects of the banking and credit union models. Under the new model, the Bank would have the ability to distribute earnings to its member owners, like a bank, while avoiding the corporate level taxes that a traditional bank would normally have to pay. (2d Am. Compl. at ¶¶ 21-24, ECF No. 33.)

In late 2007, the Bank received confirmation from the Federal Reserve that it could move forward with its first proposed private placement and issuance of preferred member equity shares in order to implement the plan. (*Id*. at ¶ 25.)

In early 2008, however, AWBM alleges that the FDIC and the Utah Department of Financial Institutions ("UDFI") "temperament" towards the bank suddenly changed and, according to AWBM, both institutions became aggressive and hostile against the Bank. (*Id*. at ¶ 27.) According to AWBM, the change in temperament by the FDIC and UDFI was the result of the FDIC changing its mind about whether the Bank's member banking concept should be allowed to be implemented, which led to the FDIC deciding to "kill the Bank in order to put an end to the new concept." (*Id*. at ¶ 31.)

AWBM alleges that the UDFI and FDIC accomplished their goal of "killing" the bank by changing their methodology for valuing the Bank's assets in an unreasonable way in order to "manufactur[e] a supposedly data-driven excuse to justify a decision that had already been made to shut down the Bank." (*Id*.at ¶ 46.)  According to AWBM, the methodology used to value the Bank's assets was different than the one used to evaluate any other bank, and AWBM claims that any bank would appear to be failing if the same methodology was applied to it. (*Id*. at ¶¶ 47-48.)

After several months of back and forth between the Bank and regulators about the condition of the bank, Defendant G. Edward Leary, the commissioner of UDFI, filed an ex parte petition in Utah state court on May 1, 2009 seeking an order granting UDFI possession of the Bank. (*Id*. at ¶ 67.) The state court held a hearing on the same day, without the attendance of the Bank or AWBM. AWBM alleges that Commissioner Leary failed to disclose material information to the state court at the hearing, including the amount of additional capital that would have been required to meet the Bank's minimum capital requirements. (*Id*. at ¶¶ 100-103.) At the conclusion of the hearing, the petition was granted, without notice to AWBM or the Bank, despite the Bank's previous request that it be given notice of any action taken by the UDFI. (*Id*. at ¶¶ 106-107.) The FDIC was appointed as receiver for the Bank on the same day. (*Id*. at ¶ 108.) The FDIC "immediately and publicly announced the failure and seizure of the Bank and began liquidating assets of the Bank." (*Id*. at ¶ 109.) The depositor accounts were taken over by Cache Valley Bank. (*Id*. at ¶ 114.)

According to AWBM, the Bank's assets were liquidated at values that exceeded the regulator's estimates, giving the purchasers of the assets "significant profits from their resale" that could have been realized by the Bank if it had not been seized. (*Id*. at ¶¶ 116-119.)

## Procedural History

Utah Code § 7-2-3 provides that a person or institution that the commissioner of UDFI has taken possession of, and that considers itself aggrieved by the taking, may apply to the court within 10 days of the taking to enjoin further proceedings.

Rather than asking the state court to enjoin the taking within the 10-day statutory period, however, AWBM waited more than two years to challenge the UDFI's possession of the bank, bringing a separate action in state court in 2012 (the "2012 Action"). The 2012 Action raised

3

several of the same claims and allegations that have been asserted in this suit. The 2012 Action was dismissed without prejudice under Rule 12(b)(6) of the Utah Rules of Civil Procedure for failing to allege sufficient facts. The Utah Supreme Court upheld the dismissal in 2014.[2] *See Am. West Bank Members, L.C. v. Utah*, 2014 UT 49, 342 P.3d 224.

AWBM subsequently initiated the current action, initially in state court, on March 23, 2016. (ECF No. 2-1.) AWBM's initial complaint asserted claims against the State of Utah, UDFI, and Commissioner Leary (collectively, the "State") for breach of contract, violation of due process, a violation of the Takings Clause of the Utah Constitution. (*Id*.) The State then removed the action to this court on April 21, 2016. (ECF No. 2.)

On February 5, 2018, the court partially granted a motion to dismiss filed by the State, dismissing AWBM's contract claims on statute of limitation grounds, and permitted AWBM to file an amended complaint to plead its taking claims with more particularity. (ECF No. 29.) Thereafter, AWBM filed its second amended complaint, which is now the operative complaint in this action, on April 6, 2018, (ECF No. 33).

The second amended complaint asserts seven causes of action: (1) violation of procedural due process, (2) violation of substantive due process, (3) violations of § 1983 and § 1985 by Commissioner Leary, (4) physical takings claim in violation of the Utah Constitution, (5) regulatory takings claim in violation of the Utah Constitution, (6) physical takings claim in

---

[2] The district court in the 2012 Action apparently dismissed AWBM's procedural and substantive due process claims with prejudice on the grounds that AWBM did not have a clearly established constitutional right to a pre-seizure hearing. The Utah Supreme Court reversed that decision, holding that the dismissal should have been without prejudice because determining whether a pre-seizure hearing was constitutionally required involved a fact-dependent inquiry. *See Am. West Bank Members, L.C.*, 2014 UT 49 at ¶¶ 37-44.

4

violation of the U.S. Constitution, and (7) regulatory takings claim in violation of the U.S. Constitution. (ECF No. 33 at ¶¶ 120-263.)

In its procedural due process claim, AWBM alleges that it had a clearly established constitutional right to pre-seizure notice and a hearing because Commissioner Leary knew or should have known that the grounds relied on to obtain the seizure order were false. According to AWBM, the allegations about the Bank's status that were included in the seizure petition could not have been made in good faith in light of facts that Leary was or should have been aware of.

AWBM's substantive due process claim alleges that the Utah statute authorizing UDFI to seize the bank without a hearing is unconstitutional as applied to the Bank to the extent it permitted such a seizure on the grounds relied on by Commissioner Leary.

AWBM's §§ 1983/1985 against Commissioner Leary is based on largely the same allegations underlying the due process claims—that Leary violated AWBM's constitutional rights by seizing the bank without a pre-seizure hearing.

AWBM's takings claims allege that the seizure of the bank constitutes either a physical or regulatory taking of AWBM's property interest in "the profitable use and enjoyment of its rights under the [Bank's] charter and the valuable and marketable assets (including notes, trust deeds, accounts, investments, going concern, and good will) which AWBM had acquired and developed in operation of the Bank." (*Id*. at ¶ 234.)

As remedies, the second amended complaint seeks "an order requiring UDFI to issue a corrected press release with terms approved by the court; an order requiring UDFI to reissue the Bank's charter and provide the Bank with the minimum capital required for operation; and an order requiring UDFI to correct its files and records consistent with the findings of the court." (*Id*. at ¶

175.) The complaint also seeks monetary damages, including damages in amount that would "put AWBM in the position it would have occupied but for the [taking of its property interests]." (*See, e.g.*, *id*. at ¶ 238.)

On February 9, 2019, AWBM filed a motion seeking partial summary judgment and a declaration on the grounds that it was undisputed that its due process rights had been violated. (ECF No. 45.) The court denied AWBM's motion on April 20, 2020. (ECF No. 64.) In doing so, the court concluded that it lacked subject matter jurisdiction, under the *Rooker-Feldman* doctrine, over AWBM's claims to the extent they challenged the state court's decision to issue an order authorizing UDFI to take possession of the bank without providing the Bank or AWBM with a pre-seizure hearing. (*Id*. at 18-24.) The court also concluded, however, that the *Rooker-Feldman* doctrine did not bar the court from considering AWBM's claims to the extent they were based on the allegation that the state court's order of possession was obtained as a result of Commissioner Leary's purported failure to disclose material facts to the state court that, if known, would have resulted in disapproval of the seizure. (*Id*.)

After making its jurisdictional determination, the court held that, when the facts were viewed in the light most favorable to the State, Commissioner Leary had a legitimate basis to seek an order for possession of the bank and that AWBM had waived its procedural due process claim by failing to seek an injunction from the state court within 10 days of the taking. (*Id*. at 34.) The court also held that it lacked jurisdiction over AWBM's substantive due process claim to the extent it was based on the state court's decision to not allow the Bank to participate in the May 1, 2009 hearing that preceded the order of possession. (*Id*. at 35.) The court also denied summary judgment

on AWBM's Section 1983 claim because it depended on a finding that AWBM's procedural or substantive due process rights had been violated. (*Id.*)

## Analysis

In its motion for summary judgment, the State argues (among other things) that AWBM lacks standing[3] to bring the claims asserted in the second amended complaint because each of those claims are derivative of claims that belong to the Bank and that all of AWBM's derivative rights, relating to the Bank's seizure, were transferred to the FDIC pursuant to 12 U.S.C. § 1821(d)(2)(A) upon the FDIC's appointment as the Bank's receiver. (ECF No. 280 at 26-30.)

Section 1821(d)(2)(A), which was amended in relevant part by the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), provides that, when the FDIC is appointed as a conservator or receiver of a bank (including a state bank), the FDIC "shall, as conservator or receiver, and by operation of law, succeed to--

> (i) all *rights, titles, powers, and privileges* of the insured depository institution, *and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution*; and
>
> (ii) title to the books, records, and assets of any previous conservator or other legal custodian of such institution.

(Emphasis added).

---

[3] While the State couches its argument in terms of standing, the argument does not concern this court's Article III standing and, thus, does not implicate the court's subject matter jurisdiction. Instead, the argument concerns what is sometimes referred to as "prudential standing," which "encompasses various limitations, including the general prohibition on a litigant's raising another person's legal rights." *See Brumfiel v. U.S. Bank*, 618 F. App'x 933, 936 (10th Cir. 2015). Rule 17(a)(1) of the Federal Rules of Civil Procedure, which required that actions be prosecuted in the name of the real party in interest, "essentially codifies this portion of the prudential standing doctrine." *Id*.

The Tenth Circuit has held that, by passing FIRREA, "Congress has transferred everything it could to the FDIC, and that includes a stockholder's right, power, or privilege to demand corporate action or to sue directors or others when action is not forthcoming." *Barnes v. Harris*, 783 F.3d 1185, 1192 (10th Cir. 2015) (quoting *Pareto v. FDIC*, 139 F.3d 696, 700 (9th Cir. 1998)).

In *Barnes v. Harris*, the Tenth Circuit addressed application of Section 1821(d)(2)(A) under factual circumstances analogous to those presented in this case. *Barnes* concerned the failure of Barnes Banking Company, a Utah bank that was seized and put into FDIC receivership in 2010. The suit, which was initially filed in state court, was a derivative action brought by shareholders against Barnes Bancorporation, the holding company of Barnes Banking Company, as a nominal defendant and against the holding company's officers and directors for breach of fiduciary duty. *Id*. at 1188. The complaint stated that the officers and directors were being sued in their capacity as officers and directors of the holding company, but the factual allegations centered on their mismanagement of the bank. *Id*.

The FDIC moved to intervene in the state action, arguing that "it possessed the exclusive statutory authority under FIRREA to assert the derivative claims at issue." *Id*. at 1189. After being allowed to intervene, the FDIC removed the action to federal court. *Id*. Once in federal court, the FDIC sought and obtained dismissal of the plaintiffs' complaint in full. *Id*.

On appeal, the Tenth Circuit held that the claims asserted by the plaintiffs belonged to the FDIC under FIRREA. It reasoned that "[i]f the Holding Company's claims are based on harm derivative of injuries to the Bank, then they qualify as claims of a shareholder 'with respect to the [bank] and the assets of the [bank]' and belong to the FDIC" under Section 1821(d)(2)(A)(i). *Id*. at 1193.

The court then looked to Utah law to determine whether the claims asserted were derivative claims. Interpreting Utah law, the court concluded that "Utah courts look to the nature of the injury in determining whether a claim is derivative or direct." *Id*. "[I]n a direct action, the plaintiff can prevail without showing an injury to the corporation—the shareholder need show only an injury to him- or herself that is distinct from that suffered by the corporation." *Id*. (quoting *Aurora Credit Servs., Inc. v. Liberty W. Dev., Inc.*, 970 P.2d 1273, 1280 (Utah 1998)) (alteration in *Barnes*). But if the "plaintiffs were injured because the company was injured, the claim is derivative." *Id*. (quoting *Dansie v. City of Herriman*, 134 P.3d 1139, 1144 (Utah 2006)) (cleaned up).

Applying Utah law, the court concluded that, with one exception, the plaintiffs did not allege any harm to the holding company that was distinct and separate from the harm to the bank. *Id*. The plaintiffs argued that the holding company's payment of $265,000 in dividends to shareholders caused a harm that was unique to the holding company because it left the holding company "unable to serve as a source of financial strength for the Bank." *Id*. at 1194. The court, however, held that any harm from the dividend payment was derivative, because the dividend only caused harm because of the bank's failure, and not any independent harm to the holding company. *Id*. Thus, the court held that because the plaintiff's sought "redress for injuries that first befell the Bank, and reached the Holding Company only derivatively as a result of its ownership interest in the Bank," the claims were "decidedly derivative in nature." *Id*.

While *Barnes* makes clear that a stockholder's claims that are derivative of claims belonging to a bank in FDIC receivership are assumed by the FDIC under FIRREA, it does not address the question of whether other claims, that are not classically considered to be derivative,

9

may also fall within the scope of FIRREA's succession clause.[4] On that point, the Court finds the First Circuit's decision in *Zucker v. Rodriguez*, 919 F.3d 649 (1st Cir. 2019), to be instructive.

In *Zucker*, the First Circuit rejected the plaintiff's argument that Section 1821(d)(2)(A)'s succession language applied only "to claims that shareholders may assert derivatively under state law on behalf of the institution in receivership," concluding that there was "no support in the text of § 1821(d)(2)(A) for such a judicial gloss." 919 F.3d at 656. Instead, the court held that the plain language of the statute should be applied, in a step-by-step process, to determine whether the claim at issue falls within the scope of FIRREA's succession clause, without regard to whether it is a derivative or direct claim.

The first step in the analysis described in *Zucker* is to determine whether the claim asserts a "right of a stockholder" of the bank. *Id*. The claim at issue in *Zucker* asserted a breach of duties owed to the bank's holding company by the holding company's officers and directors. The court held that although the claims were directed at the officers and directors of the holding company, "the suit depend[ed] entirely on the Holding Company's position as a Bank stockholder, as it seeks to recover for lost interest in the Bank." *Id*. Therefore, the court concluded that the rights being asserted were the rights of the holding company as a stockholder of the bank. Accordingly, they met the first element of Section 1821(d)(2)(A)'s requirements.

---

[4] In *Barnes*, the Tenth Circuit did hold that one of the plaintiffs' claims was not barred by FIRREA. 783 F.3d at 1196-97. That claim concerned use of funds that the FDIC asserted no claim to and "which were apparently Holding Company property rather than bank assets." *Id*. at 1196. Notably, the Tenth Circuit did not clarify in *Barnes* whether that claim was exempted from FIRREA's succession clause based solely on the fact that it was a direct claim or because it was otherwise outside the scope of Section 1821(d)(2)(A). *Id*.

In the second step, the court considered whether the rights being asserted were "with respect to the institution and the assets of the institution." The court held that they were, because "the claims depend on the Holding Company's proving that malfeasance by its directors depressed the Bank's assets." *Id*. at 656-57. Accordingly, the plaintiff's claim also met the second element of Section 1821(d)(2)(A) and was, therefore, assumed by the FDIC, despite the plaintiff's contention that the claim was direct rather than derivative. *Id*.

The court finds the reasoning of the First Circuit in *Zucker* with respect to the scope of FIRREA's succession clause persuasive. There is nothing in the plain language of Section 1821(d)(2)(A) that limits the scope of the statute's succession language to derivative claims exclusively. Accordingly, the court will apply the two-step analysis set forth in *Zucker* to determine whether AWBM's claims were assumed by the FDIC pursuant to FIRREA's succession clause.

Before doing so, however, the court must against determine which of AWBM's it has jurisdiction to decide. As explained above, the court has already held that the *Rooker-Feldman* doctrine bars the court from hearing AWBM's claims to the extent they relate to actions taken by the state court in the state court's possession proceedings. (*See* Mem. Dec. Denying Mot. for P. Summ. J., ECF No. 64.) Thus, the court has no jurisdiction to hear AWBM's claims to the extent they are based on the state court's decision not to allow the Bank or AWBM to participate in the May 1, 2009 hearing that preceded the order of possession.[5]

---

[5] At oral argument on the State's motion, AWBM raised a new argument that appeared nowhere in their briefing in response to the State's motion for summary judgment and was not pleaded anywhere in AWBM's second amended complaint—that AWBM was deprived of a post-seizure hearing, and therefore had its due process rights violated, as a result of UDFI appointing the FDIC immediately after taking possession of the Bank. According to this new argument, by

As set forth in the court's prior *Rooker-Feldman* analysis, the only claim that it has jurisdiction to hear is the claim that AWBM's rights were violated as a result of Commissioner Leary's purported failure to disclose material information to the state court judge that would have prevented entry of the order of possession. (*Id*. at 24.) In other words, the court has jurisdiction to consider AWBM's claim to the extent it is based on allegations that the order of possession was obtained through fraud. (*Id*.)

Having narrowed the claims, as required by the *Rooker-Feldman* doctrine, it is evident that AWBM's claims fall within the scope of FIRREA's succession clause and thus were assumed by the FDIC upon its appointment as receiver of the Bank.

First, it is clear that the claims assert rights that belong to AWBM by virtue of its status as a stockholder of the Bank. To succeed on its claims, AWBM would have to prove that Defendants withheld material information from the state court regarding the Bank, such as the amount of capital needed by the Bank to stay solvent, the alleged change in accounting methodology by UDFI, and the Bank's objection to that change. To the extent AWBM has any rights with respect to the information that was presented to the state court during the possession hearing, they only exist because AWBM is a stockholder of the Bank. Therefore, AWBM's claim are claims asserting

---

appointing the FDIC as receiver immediately after the state court issued its order of possession, the State stripped the state court of jurisdiction and precluded AWBM from asserting a timely objection to the seizure within the 10-day period allowed by Utah Code § 7-2-3. The court is skeptical of AWBM's argument, which does not appear to be supported by any legal authority. Moreover, the court is also likely barred by the *Rooker-Feldman* doctrine from considering the new claim, as the state court authorized appointment of a receiver and was aware of the FDIC's involvement in the case. (*See* Order of Possession at 4, ECF No. 280-40.) Nevertheless, the court will not address the merits of AWBM's new argument where it was never properly pleaded or briefed in response to the State's motion.

rights of a stockholder of the Bank, meeting the first element of Section 1821(d)(2)(A)'s requirement.

Second, it is also evident that the rights asserted by AWBM are rights "with respect to the" Bank. AWBM claims that its due process rights were violated, and that its property rights were unlawfully taken without just compensation, when the Bank was unlawfully seized after Defendants purportedly obtained an unlawful order of possession from the state court by fraud. Thus, to sustain its claims, Defendants' must prove that the seizure, an injury to the Bank, was unlawful. And without showing an injury to the Bank resulting from the purportedly unlawful seizure, AWBM has no claim.

Moreover, the complaint makes clear that AWBM is seeking recovery of the assets of the Bank. As a remedy, the complaint seeks "an order requiring UDFI to issue a corrected press release with terms approved by the court; an order requiring UDFI to reissue the Bank's charter and provide the bank with the minimum capital required for operation; and an order requiring UDFI to correct its files and records consistent with the findings of the court." (2d Am. Compl. at ¶ 183, ECF No. 33.) And in its taking claims, AWBM alleges it was deprived of "the profitable use and enjoyment of its rights under the charter and the valuable and marketable assets (including notes, trust deeds, accounts, investments, going concern, and good will) which AWBM had acquired and developed in operation of the Bank" (*Id*. at ¶ 234.) Each of these are assets of the Bank, not AWBM. Thus, it is clear that AWBM's claims assert rights "with respect to . . . the assets" of the Bank as well, meeting Section 1821(d)(2)(A)'s second element.

Because AWBM's claims, as narrowed by the *Rooker-Feldman* doctrine, assert rights of a stockholder of the Bank with respect to the Bank and its assets, they fall squarely within the scope

13

of FIRREA's succession clause and were assumed by the FDIC upon its appointment as the Bank's receiver. Therefore, AWBM cannot pursue those claims, on its own behalf, in this action.

AWBM argues that, despite the plain language of Section 1821(d)(2)(A) and the precedent cited above, its claims are distinguishable from those that courts have found to have been assumed by the FDIC because they are against third parties rather than insiders of AWBM or the Bank. But there is nothing in the language of Section 1821(d)(2)(A) that distinguishes between third party claims and claims against insiders. Nor has AWBM cited any legal authority indicating that such a distinction makes a difference. To the contrary, other federal courts have applied FIRREA's succession clause to third party claims. *See, e.g.*, *Zucker*, 919 F.3d at 656 (shareholder's claims to bank's insurance proceeds transferred to FDIC under 12 U.S.C. § 1821(d)(2)(A)(i)); *Am. Nat'l Ins. Co. v. JPMorgan Chase & Co.*, 893 F. Supp. 2d 218, 218 (D.D.C. Sept. 28, 2012) (claims of shareholder's of Washington Mutual against JPMorgan Chase for tortious interference transferred to FDIC under FIRREA's succession clause); *Lubin v. Cincinnati Ins. Co.*, Case No. 1:09-CV-1156-RWS, 2009 WL 4641765 (N.D. Ga. Nov. 30, 2009) (FDIC succeeded to derivative claims against bank's insurer brought by bankruptcy trustee of bank's holding company). Thus, AWBM's claims are not exempt from the requirements of Section 1821(d)(2)(A) merely because they are asserted against third parties rather than company insiders.

AWBM also argues that it should be allowed to proceed because making demand on the FDIC to bring the claims asserted in this action would be futile. AWBM's argument misconstrues the import of FIRREA's succession clause. Nothing in Section 1821(d)(2)(A) grants AWBM the right to proceed derivatively in this action on behalf of the FDIC. Nor has AWBM cited any authority suggesting that it has such a right to do so. Section 1821(d)(2)(A) transfers, at a

minimum, AWBM's right to bring derivative claims on behalf of *the Bank* to the FDIC. It does not create a new right to proceed derivatively on behalf of *the FDIC* once those rights have been transferred.[6]

Because AWBM's claims fit squarely within the scope of FIRREA's succession clause, they were assumed by the FDIC upon its appointment as receiver of the Bank. AWBM is, thus, not the proper party to assert them in this action and the State is entitled to summary judgment.

### Conclusion

For the reasons stated herein, the State's motion for summary judgment is GRANTED. AWBM's claims are dismissed with prejudice and all other pending motions are denied as moot.

SO ORDERED this 21st day of June, 2023.

BY THE COURT:

_____
Clark Waddoups
United States District Judge

---

[6] Even if AWBM did have a right to proceed derivatively on behalf of the FDIC, its second amended complaint does not purport to be bringing claims derivatively and does not comply with the requirements of Rule 23.1 of the Federal Rules of Civil Procedure.